359 A.2d 369

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Harry MABIE, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 29, 1976.

Decided July 6, 1976.

466

Edward G. Rendell, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

Appellant, Harry Mabie, was arrested on March 1, 1974, in connection with the stabbing death of Lawrence DiGiacinto. Shortly thereafter, the court appointed counsel to represent the accused. On March 20, 1974, a preliminary hearing was held and subsequently Mabie was indicted on charges of murder, aggravated assault, possessing a prohibited offensive weapon and possessing an instrument of crime. On April 16, 1974, Mabie and his counsel appeared in court and specifically waived any

right he may have had to file a motion to suppress a statement which Mabie made to police at the time of his arrest. On April 23, 1974, following plea negotiations between his counsel and the district attorney, Mabie, on the advice of counsel, entered a plea of guilty to murder generally. In return, the Commonwealth nolle prossed the aggravated assault and weapons charges, certified that the charge of murder rose no higher than murder of the second degree and recommended a sentence of from five to fifteen years imprisonment. After a colloquy, the guilty plea was accepted and at a degree of guilt hearing which followed, Mabie was adjudged guilty of murder of the second degree. A sentence of from five to fifteen years imprisonment was imposed. No post verdict motions were filed and no appeal was taken from the judgment of sentence.

On September 12, 1974, Mabie filed a *pro se* petition requesting relief under the Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, § 1 et seq., 19 P.S. § 1180–1 et seq. [Supp.1975–76]. On October 8, 1974, the petition was denied without a hearing. An appeal was filed in this Court and on May 1, 1975, pursuant to an agreement of counsel, we remanded the case to the lower court for the filing of an amended PCHA petition and a hearing thereon.

The amended petition was filed alleging as grounds for relief that Mabie's plea of guilty was not voluntarily entered and that he was denied the effective assistance of trial counsel. A hearing was held on June 25, 1975 and relief was denied. This appeal, which presents the single issue of whether Mabie received effective assistance of counsel before entering his plea, followed.

██ Initially, the Commonwealth contends that the issue has been waived since the question of effective assistance of trial counsel could have been raised on direct appeal and no such appeal was taken. *Commonwealth v.*

*Tunnell,* 463 Pa. 462, 345 A.2d 611 (1975); *Commonwealth v. Blair,* 463 Pa. 383, 344 A.2d 884 (1975); *Commonwealth v. Dancer,* 460 Pa. 95, 331 A.2d 435 (1975). See also, *PCHA,* supra, §§ 3(d) and 4(b), 19 P.S. § 1180-3(d) and § 1180-4(b); *Commonwealth v. Hines,* 461 Pa. 271, 336 A.2d 280 (1975). While the issue was cognizable on direct appeal and Mabie's failure to so enter it raises, at least, a rebuttable presumption that his failure was knowing and understanding, and, therefore, the issue has been waived, we believe certain extraordinary circumstances present in this case have preserved this issue for our review at this time. In *Commonwealth v. Dancer,* supra, this Court, speaking through Mr. Justice Roberts said, "Our Post Conviction Hearing Act and the principles of judgment finality mandate that claims of ineffectiveness of counsel may only be raised in PCHA proceedings (1) where petitioner is represented on appeal by his trial counsel, for it is unrealistic to expect trial counsel on direct appeal to argue his own ineffectiveness, . . ." 460 Pa. at 100, 331 A.2d at 438. Here, since trial counsel, who Mabie contends was ineffective, would have been required to file post verdict motions and a direct appeal on the issue of his own ineffectiveness were such procedures initiated, it is similarly unrealistic to expect counsel to file motions and/or an appeal challenging his own effectiveness. Therefore, where a PCHA petition alleges as grounds for relief that trial counsel, with whom the petitioner consulted concerning the feasibility of appeal,[1] has been ineffective and where trial counsel has not taken a direct appeal on behalf of the petitioner, the question of whether trial

---

1. The record reveals that Mabie consulted with his trial counsel concerning his appellate rights and options before the entry of the plea. The record also shows that Mabie was advised of his appellate rights by the court immediately after sentence was imposed. However, Mabie and his trial counsel had no contact after these proceedings were concluded.

counsel was ineffective has not been waived for the purposes of review in a PCHA proceeding.

Appellant's claim that trial counsel was ineffective is based primarily upon counsel's alleged failure to satisfactorily investigate certain facts of the case thereby foreclosing several possible defenses. As such, appellant requests a new trial. Cf. *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948). Since an evaluation of counsel's stewardship necessarily requires an examination of the facts and circumstances within counsel's knowledge at the time of the plea, the record has been reviewed, see *Commonwealth v. Woody*, 440 Pa. 569, 271 A.2d 477 (1970), and discloses the following.

On March 1, 1974, Mabie was arrested and gave a statement to police. In his statement, Mabie said that he and his brother had been drinking all day and that they had entered the bar where the incident took place to drink and play shuffleboard. Appellant was very successful playing shuffleboard for drinks with other patrons and became loud and boastful; so much so, he was refused additional service. The deceased, DiGiacinto, who had lost several times to appellant, started to shout and an argument ensued in which the deceased picked up a bar stool and hit Mabie three times. Mabie then drew a concealed knife and stabbed the deceased several times causing his death. On March 10, 1974, Mabie was interviewed by court-appointed counsel and during that interview he reiterated his statement to police with the additional information that he had been taken to a hospital for treatment of injuries after giving his statement. He then requested that counsel obtain the hospital records. Counsel then interviewed appellant's brother, who told counsel that he could not remember the incident due to his own intoxication, but counsel apparently made no effort to obtain the hospital records.

Counsel then met with a representative of the district attorney's office for plea bargaining purposes and at-

tempted to negotiate for a guilty plea to voluntary manslaughter. However, the district attorney insisted upon a conviction of murder of the second degree and, failing that, the Commonwealth would proceed to trial seeking a conviction for murder of the first degree. Counsel was, however, shown the Commonwealth's file which contained the statement Mabie gave to the police, a police officer's description of Mabie when arrested and the names of several eyewitnesses.

On March 20, 1974, counsel represented Mabie at a preliminary hearing. The Commonwealth presented only one eyewitness, who was wounded during the incident, and he testified that he had been talking at the opposite end of the bar until he heard shouts. He turned and saw the actual stabbing, ran to help his friend, the deceased, and was wounded in the scuffle. On March 26, counsel again interviewed Mabie. At this meeting, counsel explained his inability to produce witnesses or corroborative evidence. He also explained the lack of possible defenses and informed Mabie of the plea bargain meeting with the district attorney. Mabie, however, did not agree to enter a plea at that point.

On April 17, Mabie and counsel appeared in court to enter a waiver to any right Mabie may have had to file a motion to suppress.[2] Following that appearance, Mabie told counsel that he was willing to plead guilty to murder generally in return for a recommended sentence of from five to fifteen years imprisonment. That plea was entered one week later and was accepted. Counsel offered no evidence of mitigating circumstances at the ensuing degree of guilt hearing.

2. The opinion below, in evaluating counsel's stewardship, relies, in part, upon counsel's filing a motion to suppress and arguing that motion. However, the record does not indicate that any such motion was ever filed nor is there an indication that a suppression hearing was held.

Appellant now points to several omissions on counsel's part to establish that counsel was ineffective. These are, namely: failure to obtain the hospital records; failure to question eyewitnesses; and failure to offer evidence of mitigation at the degree of guilt hearing. At the hearing on the PCHA petition, trial counsel was called upon to explain his actions or lack thereof. In response to questions concerning his failure to explore appellant's contention that he was attacked and his failure to obtain the hospital records which may have established that fact, counsel stated that he relied upon the description of interrogating police officers [3] which was in the Commonwealth's file, to discount appellant's version of the incident. In response to questions concerning his failure to question eyewitnesses, counsel stated that based on the testimony he heard from the single witness at the preliminary hearing and a conversation [4] with Mabie, he concluded that the witnesses were so hostile that to call them at trial may have invited a conviction of murder of the first degree. Counsel admitted that, although he saw the witnesses at the preliminary hearing, he made no effort to speak with them at this or any other time. In response to questions concerning his failure to present evidence of mitigation at a degree of guilt hearing following the entry of a plea of guilty to murder generally, counsel stated that he was constrained not to introduce such evidence by an agreement with the district attorney entered into during plea negotiations.

**3.** On the back of one of the pages of the statement Mabie gave after his arrest, there appeared a notation which states that Mabie had no visible injuries but also said there was blood about his head, hands and arms.

**4.** During one of the interviews with counsel, Mabie informed him that he saw several of the eyewitnesses while he was enroute to the preliminary hearing. He stated that he extended his hand and apology but that both were rebuffed with harsh words from the potential witnesses.

This Court has repeatedly stated the standard for determining effective assistance of counsel as:

" 'counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel *had some reasonable* basis designed to effectuate his client's interest. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.' " [Emphasis in original]

*Commonwealth v. Dancer,* supra, 460 Pa. at 103, 331 A. 2d at 439, quoting *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 605, 235 A.2d 349, 352–53 (1967). Therefore, the task of this Court is to determine whether the decisions made by counsel instantly had some reasonable basis designed to effectuate Mabie's interest.

■■ The Commonwealth contends that by negotiating a certification that this crime rose no higher than murder of the second degree, in the face of the Commonwealth's statement that it would seek a conviction for murder in the first degree, counsel's stewardship was, indeed, effective. However, while this Court has held that negotiations to reduce the degree of guilt in return for a plea of guilty can constitute effective assistance of counsel, *Commonwealth v. Fields,* 463 Pa. 244, 344 A.2d 814 (1975), merely showing that plea negotiations took place which reduced the degree of guilt to lower than that originally sought by the Commonwealth cannot, in itself, be so viewed. In *Commonwealth v. Fields,* supra, counsel had made an investigation of the underlying facts of the case, the defendant was confronted with strong evidence of his guilt of murder of the first degree and the Commonwealth stated that it would seek a conviction for murder of the first degree if a plea of guilty was not en-

tered. While the Commonwealth may have sought a conviction of murder of the first degree in this case, the evidence bearing on that offense was not as strong as in *Fields* and, more importantly, counsel's investigation in this case was not sufficient to apprise him of the essential facts necessary to effectively advise Mabie. Accordingly, we conclude Mabie was not afforded the quality of representation the Constitution requires.

■■ First, counsel discounted the defense of self-defense, as well as the possible mitigation of the crime, without questioning witnesses other than the defendant and his brother and without attempting to confirm Mabie's account of the incident through the hospital records. Counsel testified that he did so based on information contained in the Commonwealth's file to which he was given access. However, "[t]he Constitution does not contemplate that prisoners shall be dependent upon government agents for legal counsel and aid, however, conscientious and able those agents may be. Undivided allegiance and faithful, devoted service to a client are prized traditions of the American lawyer. It is this kind of service for which the Sixth Amendment makes provision." *Von Moltke v. Gillies,* supra, 332 U.S. at 725, 68 S.Ct. at 324. Further, the prosecution's file is not a substitute for an independent investigation by defense counsel. Since discussions with witnesses and a review of Mabie's hospital records may have established a defense and the pursuit of such a possible defense was curtailed only upon the basis of information in the Commonwealth's file, counsel's decision not to investigate either or both avenues cannot be said to have a reasonable basis designed to effectuate his client's interest. *Cf. Commonwealth v. Smith,* 442 Pa. 265, 275 A.2d 98 (1971).

Second, counsel decided not to interview eyewitnesses to the incident based only on the testimony of one witness at the preliminary hearing and the conversation with

Mabie. From the above information, it is counsel's position that these witnesses were so hostile that to call them to testify would invite a conviction for murder of the first degree. However hostile these witnesses may have appeared to be, there is no basis for the decision neither to interview them nor to attempt to do so. While hostile witnesses at trial may have presented added difficulties to appellant's case, the question here is the decision not to interview them, not the decision to refrain from calling them at trial. Accordingly, there was no danger of hostile witnesses inflaming a jury during an interview to determine what each saw and their degree of potential hostility. Rather, the value of the interview is to inform counsel of the facts of the case so that he may formulate strategy. Perhaps, after questioning these witnesses, counsel may have concluded that the best strategy was not to call them due to hostility and, as a matter of strategy, that decision on counsel's part would not be subject to a claim of ineffective assistance of counsel. *Commonwealth v. Owens*, 454 Pa. 268, 312 A.2d 378 (1973). However, no such claim of strategy can be attached to a decision not to interview or make an attempt to interview eyewitnesses prior to trial. Therefore, no reasonable basis designed to effectuate Mabie's interest can be attributed to counsel's failure to question these witnesses or at least make a reasonable attempt to do so.

Since we consider the above two reasons sufficient to establish that trial counsel in this case was not constitutionally effective, we do not reach appellant's third contention that counsel was ineffective in failing to introduce evidence which would tend to mitigate the offense at the degree of guilt hearing.[5]

5. Appellant also makes much of the fact that the entire procedure in this case, from arrest to adjudication and sentencing, took approximately seven weeks. It is not the celerity of the process which tends to place the decisions of defense counsel in a poor light since celerity in the criminal justice system is a desirable goal. Rather, it is the manner in which the process is conducted which is the focus of the law's attention.

The order is reversed. The judgment of sentence is vacated and a new trial is granted.

NIX, J., concurs in the result.

POMEROY, J., dissents.