490 A.2d 832

**COMMONWEALTH of Pennsylvania**

v.

**James MERSCHEN, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 28, 1983.

Filed Feb. 15, 1985.

Reargument Denied April 29, 1985.

Paul G. Hughes, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, MONTEMURO and MONTGOMERY, JJ.

WICKERSHAM, Judge:

On February 24, 1978, police arrested appellant, James Merschen and charged him with aggravated assault, possession of an instrument of crime and unlawfully carrying a firearm without a license, Information Nos. 262–264, April Term, 1978. Those charges arose out of the shooting of Arthur Hoffman by appellant on February 24, 1978 at approximately 4:15 p.m. in the City of Philadelphia where both men were employed. Immediately after the shooting,

Mr. Hoffman was taken to the Hospital of the University of Pennsylvania where he was admitted in guarded condition and treated for a gunshot wound of the abdomen. Following surgery Mr. Hoffman remained in the hospital three days and thereafter required continued outpatient treatment for permanent disability resulting from the shooting (N.T. Sentencing 1/10/79 at 14).

Appellant was tried before the Honorable Marvin R. Halbert of the Court of Common Pleas, Philadelphia County, sitting without a jury on June 29, 1978. Appellant did not deny shooting the victim; he instead claimed that he had acted in self-defense. Judge Halbert found appellant guilty of the above charges. He rejected appellant's claim of self-defense, holding that while appellant may have believed he was acting in self-defense, the belief was unreasonable (Lower ct. op., 2/25/83 at 4). On January 10, 1979, after denying post-verdict motions, Judge Halbert sentenced appellant to a term of one week to twenty-three months imprisonment in the Forensic Unit of the Philadelphia County Prison with psychiatric supervision of probation for aggravated assault, a consecutive one year probation with psychiatric supervision for possessing an instrument of crime and a concurrent one year probationary period for carrying a firearm without a license. (Appellant served ten days imprisonment and was thereafter released on probation). Appellant was, in addition, ordered to pay $1500 restitution to the victim.

Appellant appealed from the judgment of sentence. On appeal he questioned the effectiveness of his trial counsel. Our court granted appellant's petition for remand for an evidentiary hearing. Judge Halbert heard evidence on the effectiveness of trial counsel on March 13 and October 30, 1980. By opinion dated February 25, 1983, Judge Halbert denied relief, holding that appellant had received effective representation. Appellant appeals, seeking a new trial or discharge for ineffective assistance of counsel.[1]

Appellant raises the following question on appeal:

1. Brief for Appellee at 1–3.

Did Defendant have the effective assistance of counsel at trial where his lawyer failed to present available hospital records that would have bolstered Defendant's claim he was injured by the complainant and was thus acting in self-defense when he shot the complainant; where his lawyer failed to interview a possible eyewitness to the incident, who is now deceased; and where his lawyer failed to present other evidence which would have cast a shadow on the complainant's credibility?

Brief for Appellant at 3.

Based upon our review of the record, briefs of counsel and applicable law, we affirm. The opinion of the Judge Halbert, dated February 25, 1983, has appropriately dealt with the issue raised. As Judge Halbert wrote:

"This is an appeal from this Court's denial of the Defendant's Post-Trial Motions and from its imposition of sentence of one week to twenty-three months incarceration at the Forensic Unit of Philadelphia County Prison, to be followed by one year probation. The Defendant, after being found guilty by this Court sitting without a jury on the charges of aggravated assault, possession of an instrument of crime, and carrying a firearm on a public street without a license, filed this appeal. One of the issues raised on appeal by Defendant's attorney, who was not the same attorney who represented him at trial, was that of ineffective assistance of counsel at trial. Accordingly, the file was remanded to this Court for an evidentiary hearing on the ineffective assistance claim.

"The case in chief was short and the facts were relatively simple. On February 24, 1978, at about 4:00 P.M., the Defendant, James Merschen, was an employee of the City of Philadelphia working as a foreman in a garage located in a City facility on Delaware Avenue. At about that time, another employee, a maintenance mechanic, Arthur Hoffman, the complainant in this case, approached Merschen and told him that a door was to be open because it was a fire hazard. Merschen's version of the conversation, however, was different, and allegedly involved threats by Hoff-

man to Merschen. In any event, an argument ensued, and Hoffman began to pursue or follow Merschen from work area to work area at this facility. The exact nature of the argument did not appear to be particularly relevant, since at one point Merschen suddenly turned towards Hoffman, pulled a gun out which had been concealed on his person, and fired it at Hoffman. The bullet struck Hoffman in the lower left side near the abdomen. Hoffman fled the work area, clutching his side from which blood was pouring. He was taken to the hospital, and was in the intensive care unit for one and one-half days, and in the hospital for three days in all.

"Merschen took the stand in his own defense, and tried to raise the issue of self-defense. He stated that Hoffman had threatened him in the past, and on the day in question, threatened to 'bash my head in.' He further testified that Hoffman kept approaching him, and he turned away and tried to walk away from him, but Hoffman continued to follow. He stated that Hoffman was carrying a bag with a heavy object in it and an umbrella. As he continued to retreat from Hoffman, he felt a sharp pain in his leg, and as he turned around, he claimed to see Hoffman raising the bag toward him as if to do something with it. He claimed to have feared for his life, whereupon he pulled the revolver out and shot Hoffman.

"The Court, after having had the opportunity to observe these witnesses, and after having had the opportunity to hear the testimony of an additional witness, a Jacob Rubin, determined that the testimony of Merschen was totally unworthy of belief. Rubin testified that he was in the area at the time that this incident took place, and that despite Merschen's claims of yelling and shouting of threats by Hoffman, Jacob Rubin heard no such screaming. Furthermore, he testified that he saw nothing in Hoffman's hands, either prior to the shooting, and especially after the shooting. He observed Hoffman running from one of the work bays after having been shot, holding his abdomen with blood running on his hands. Merschen testified that even

after the shooting took place, Hoffman still was carrying these objects. No such objects were ever produced at trial.

"Mr. Merschen was quite nervous throughout the trial. It was obvious that he had an excellent reputation in the community, as was evidenced by the character testimony presented. It was also quite apparent that he was a very excitable individual, and that this incident would or could cost him his job, despite the fact that he had been employed for over 20 years by the City of Philadelphia. This Court further felt that Merschen may actually have believed at the time that he was defending himself, but from the facts and circumstances which existed at the time of this incident, such a belief was unwarranted and unjustified. Looking at the circumstances in a light most favorable to Merschen, it can only be said that at the very least, his reaction was an over-reaction, and not rising to the level of self-defense based on the reasonable man standard.

"Each and every element of the crimes of aggravated assault, possession of an instrument of crime, and of carrying a firearm without a license, was proven beyond a reasonable doubt by the Commonwealth, and verdicts of guilty were entered on each charge.

"On remand, Defendant's new counsel alleged that trial counsel was ineffective in failing to conduct an independent investigation into this incident. Counsel listed seven areas of investigation, which were not performed by trial counsel, and these areas were pursued at the evidentiary hearings. A copy of counsel's letter of September 4, 1979, outlining these major points is attached to this Opinion.

"At the evidentiary hearings, the Commonwealth presented an officer referred to by Mr. Merschen, who investigated a prior incident between him and Hoffman; a co-worker who supposedly had information either about the incident or about Mr. Rubin's alleged close friendship with Mr. Hoffman; and trial counsel, Stanley Bashman, Esquire. Mr. Bashman addressed the various issues which were raised in a manner which was quite satisfactory in explaining his conduct of trial to this Court. To summarize his position,

which the Court feels basically reflects the entire conduct of this case, there was no question but that Merschen shot Hoffman. The only question was whether it was in self-defense or not. Apparently from the interviews of Merschen, eight to ten in number, Bashman formed the conclusion that it was a one-on-one occurrence, and that the case would be won or lost depending on the credibility of the witnesses, specifically Hoffman and Merschen. Merschen claimed that medical records should have been obtained and presented to substantiate the fact that he was struck on the leg during this incident. Bashman testified that the hospital stay in question took place approximately three weeks after the incident, and was, therefore, of very little probative value. Merschen himself testified that he was treated after his arrest at St. Mary's Hospital, and immediately released since there was nothing wrong with his leg at the time, or so x-rays revealed nothing wrong with it.

"Merschen claimed that there was a witness, a fellow employee, Henry Oscar Newton, who was in the area at the time the incident occurred. Newton was in poor health, and since the time of the trial itself, has passed away. Bashman never interviewed this individual, but based upon his interviews with Merschen, did not feel it was necessary to do so. Merschen wanted his supervisor interviewed, and possibly called as a witness, to show that his version of the dispute between himself and Hoffman was true, as opposed to what Hoffman said. He also wanted the time sheets obtained by Bashman, so that they could be used to show that he was on duty and Hoffman was off duty at the time this occurred, which would further detract from Hoffman's credibility. Merschen also wanted Bashman to investigate a prior incident between himself and Hoffman, at which time the Philadelphia Police were called to the scene, and to talk with fellow employees to show that Jacob Rubin was actually a very close friend of Hoffman's. At the evidentiary hearing, it became quite apparent to this Court that Mr. Merschen's requests, if in fact actually made prior to trial, were in the nature of an extremely nervous client, who

places extreme importance on very minor and insignificant things in hopes that somehow they will be the 'key' to his case. Mr. Bashman's many years of experience in dealing with all types of clients, including ones such as this, and as referred to by appellate counsel as a 'nervous Nellie,' taught Bashman to proceed in the manner in which he proceeded in this case. He was the one who determined what efforts should be made pre-trial. At the evidentiary hearing, the officer was called who was involved in this prior incident that Merschen said would show the violent tendencies of Hoffman, and that officer was able to add nothing. He appeared as the result of a call, and if anything had taken place between these two individuals, it was over by the time he arrived at the scene, contrary to Merschen's assertions. One of the individuals who was named in Appellate counsel's letter who would be able to show that Rubin was a close friend of Hoffman testified and, in fact, stated just the opposite, that they were all nothing more than co-employees or friends at work.

"After taking testimony at this evidentiary proceeding, this Court was convinced that Bashman had investigated his case as much as would have been reasonable and responsible under the circumstances. Additionally, some of the points raised by Merschen, when presented at the hearing, appeared to be totally without basis and invalid. The very witnesses he claimed to have been so necessary added absolutely nothing to his case.

"Once again, Bashman's assertion that the case simply boiled down to a one-on-one confrontation in which credibility would be a factor was an absolutely accurate assessment of this situation.

"Upon a further review of the entire record, this Court was convinced that not only was Defendant guilty beyond a reasonable doubt of the crimes charged, but that there were no prejudicial or reversible errors requiring a new trial. Further, from the evidentiary hearing, this Court was convinced that trial counsel was not ineffective in assisting

Merschen in the defense of his case. Accordingly, the sentence imposed should stand."

Lower ct. op. at 1–7.

Judgment of sentence affirmed.

MONTEMURO, J., files a dissenting opinion.

MONTEMURO, Judge, dissenting:

Because I would agree with appellant that his trial counsel was ineffective in failing to secure, and produce at trial, hospital records allegedly favorable to the appellant's claim of self-defense, I respectfully dissent.

In order to fully understand this allegation of ineffectiveness, it is necessary to briefly recount the circumstances leading to appellant's conviction. The appellant was employed by the City of Philadelphia as a shop foreman at a garage on Delaware Avenue, between Snyder Avenue and Jackson Street. The complainant, Arthur Hoffman, was a maintenance mechanic employed at the same location. According to the evidence adduced at the evidentiary hearing, there was some animosity between the men stemming from an argument on February 9, 1978, which resulted in the police being called to the garage. Sometime after February 9, the appellant had blocked off a fire exit from the boiler room with approximately twenty (20) lockers. Hoffman took exception to this action because he felt it was a dangerous condition. Hoffman testified that on February 27, 1978, he went to the appellant's work area in "Bay Three" of the garage to ask him to remove the lockers. As Hoffman approached, the appellant turned and ran through a large doorway into "Bay Two." Hoffman followed him partway into "Bay Two." As Hoffman reached the doorway, he saw the appellant opening the large overhead door (which was electric and opened by pressing a switch). When Hoffman was approximately forty feet away from the appellant, he turned and shot Hoffman with a .22 magnum pistol.

The appellant's testimony is somewhat different. He related that on the afternoon of February 24, 1978, he was at his work area in the garage when Hoffman approached him. Hoffman was shouting and swearing, and was carrying an umbrella in one hand and something heavy wrapped in a shopping bag in the other. The appellant turned and as he was about to walk away, he felt a sharp pain in his leg which caused him to stumble and fall. He got up, ran into "Bay Two" and pushed the switch to open the large overhead door. As he did so, he fell again. He turned again and saw Hoffman, now approximately twelve feet away, leap into the air and lunge toward where the appellant lay prone. At that point, the appellant drew the pistol from his belt and fired once. He stated that Hoffman ran away, still holding the umbrella and the object wrapped in the bag. The police never found either object.

This court, in determining whether a criminal appellant was afforded effective assistance of counsel will make an independent review of the record, *Commonwealth v. Strader*, 262 Pa.Super. 166, 396 A.2d 697 (1978), and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967); *Commonwealth v. Gray*, 297 Pa.Super. 123, 443 A.2d 330 (1982). Counsel will be deemed effective if this court determines that the course of action chosen by counsel had some reasonable basis designed to effectuate his client's interest. *Commonwealth ex rel. Washington v. Maroney, supra; Commonwealth v. Johnson*, 280 Pa.Super. 309, 421 A.2d 737 (1980). However, it is only where the claim is of arguable merit that we must make an inquiry into counsel's decision not to pursue the matter. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).

The appellant alleges that trial counsel was ineffective in failing to secure hospital records to produce as evidence at trial. The appellant contends that these records would show that he was treated for injuries sustained in the confrontation with Hoffman. At the evidentiary hearing,

the appellant testified that on March 16, 1978 [actually March 6, 1978], he entered John F. Kennedy Hospital for treatment of his injured leg, and that he remained there for two and one-half weeks. He further testified that he had executed a medical release to enable counsel to secure the records of his treatment.

The appellant's trial counsel, Stanley Bashman, Esquire, also testified. He stated that the appellant had informed him of the hospital stay and had shown him some type of record; however, he did not think the hospital records were necessary. Counsel stated two grounds for his decision.

First, he stated that, on the morning of appellant's trial, he asked Mr. Rusek, the assistant district attorney, if either the umbrella or the bag containing a heavy object had been found at the scene. Upon receiving a negative response, counsel decided to "soft-pedal the issue completely, just have him say what he said and that's it." (N.T. October 30, 1980, at 99, 100). Counsel's second reason was stated as follows: "I think they were a week or two later than the event, and that troubled me too." (N.T. October 30, 1980, at 114). At trial, no mention was made of the appellant's two and one-half week hospital stay.[1]

I find that the appellant's claim is of arguable merit in that the alleged medical records are relevant to the issue of whether the appellant acted in self-defense. *Commonwealth v. Mabie*, 467 Pa. 464, 359 A.2d 369 (1976). Moreover, trial counsel's explanations do not justify his failure to investigate the medical records or to obtain them for trial.

---

**1.** However, I note the following exchange which took place after cross-examination of the appellant:

THE COURT: I have just a few.

Sir, you have indicated that you injured your leg, and I assume, or I have the impression, that you were treated for it; is that correct?

THE WITNESS: I was hospitalized.

THE COURT: You were hospitalized after this matter?

THE WITNESS: I had medical treatment that night while I was incarcerated.

At eight ten I was taken to Saint Mary's, and my leg was x-rayed, and they found no broken bones. And I was—they—and I was taken down and locked up.

(N.T. June 29, 1978, at 77).

I begin with the proposition that the appellant's defense was predicated upon a justifiable use of deadly force. Deadly force, as defined at 18 Pa.C.S.A. § 501, is "[f]orce which, under the circumstances in which it is used, is readily capable of causing death or serious bodily injury." The use of deadly force for self-protection is limited by the provisions of 18 Pa.C.S.A. § 505(b)(2), the requirements of which were explained by the supreme court in *Commonwealth v. Brown*, 491 Pa. 507, 421 A.2d 660 (1980):

> To avail oneself of deadly force for self-protection, three factors must be found to exist. First, the actor must have reasonably believed himself to be in imminent danger of death or serious bodily harm, and that it was necessary to use deadly force against the victim to prevent such harm. Second, the actor must have been free from fault in provoking or continuing the difficulty which resulted in the slaying. Third, the actor must have violated no duty to retreat. 18 Pa. C.S.A. § 505; *Commonwealth v. McGuire*, 487 Pa. 208, 409 A.2d 313 (1979); *Commonwealth v. Black*, [474 Pa. 47, 376 A.2d 627 (1977)]; *Commonwealth v. McComb*, 462 Pa. 504, 341 A.2d 496 (1975).

*Id.*, 491 Pa. at 512, 421 A.2d at 662.

Herein, if the appellant's story is given credence, it meets the requirements set forth in *Brown*. The appellant asserts that: (1) he was attacked without warning and without provocation by Hoffman who was in an enraged state; (2) Hoffman was armed with some sort of disguised weapon; (3) Hoffman struck the appellant with that weapon, knocking him to the ground; (4) the appellant retreated until he fell [due to his injured leg]; and (5) the appellant, as he lay prone on the garage floor, shot Hoffman, who was still carrying the "weapons" lunging toward him.

The appellant's failure to prevail on his claim of self-defense is attributable to the trial judge's determination that Hoffman's version of the incident was more credible. If the appellant had been able to demonstrate that he sustained an injury consistant with his version of the incident, a different

result might have been reached. The medical records,[2] had they been investigated and introduced at trial, might have demonstrated the type of injury and its severity consistent with the appellant's story. Therefore, they were relevant to his claim of self-defense and appellant's contention that counsel was ineffective in failing to investigate and introduce them is of arguable merit.

With regard to the question of whether trial counsel had a reasonable basis for his inaction, I find the reasons advanced by counsel to be inadequate.

Counsel contended that he did not investigate or obtain the records because of a discussion he had with the assistant district attorney on the morning of appellant's trial wherein he learned that the police never found the umbrella or heavy object. This excuse is objectionable on several grounds. First, whether or not the police located the alleged weapons was irrelevant to the need to obtain the medical records. There are many possible reasons why the weapons might not have been located; not the least of which is that there is no indication that anyone ever looked for them. Thus, even if the alleged weapons were not located, the medical records would have supported the appellant's defense.

Another reason that I find counsel's excuse unreasonable was his reliance on the statement of the assistant district attorney that no weapons were found. Clearly, this reliance is no substitute for personal investigation. As stated in *Commonwealth v. Mabie, supra,* 467 Pa. at 474, 359 A.2d at 374:

... First, counsel discounted the defense of self-defense, as well as the possible mitigation of the crime, without questioning witnesses other than the defendant and his brother and without attempting to confirm Mabie's account of the incident through the hospital records. Counsel testified that he did so based on information contained

2. I note that the medical record in question was introduced at the evidentiary hearing below, but was not made part of the appellate record.

in the Commonwealth's file to which he was given access. However, '[t]he Constitution does not contemplate that prisoners shall be dependent upon government agents for legal counsel and aid, however, conscientious and able those agents may be. Undivided allegiance and faithful, devoted service to a client are prized traditions of the American lawyer. It is this kind of service for which the Sixth Amendment makes provision.' *Von Moltke v. Gillies, supra,* 332 U.S. at 725, 68 S.Ct. at 324. Further, the prosecution's file is not a substitute for an independent investigation by defense counsel. Since discussions with witnesses and a review of Mabie's hospital records may have established a defense and the pursuit of such a possible defense was curtailed only upon the basis of information in the Commonwealth's file, counsel's decision not to investigate either or both avenues cannot be said to have a reasonable basis designed to effectuate his client's interest. *Cf. Commonwealth v. Smith,* 442 Pa. 265, 275 A.2d 98 (1971).

Furthermore, by waiting until the very brink of trial to make any inquiry, counsel effectively precluded any chance of obtaining the records [should he have decided at that point they were necessary], let alone giving the records the proper analysis needed to prepare for their use at trial. Thus, the first reason advanced by counsel provides no basis for failure to investigate the records.

The second reason advanced by counsel—i.e., that he was disturbed by the time lag between the criminal incident and the onset of hospitalization—also fails to justify his omission. The case herein involved a confrontation between two men, each claiming the other as the aggressor. The appellant, however, appears in a bad light because of his use of a weapon which caused a serious injury to the complainant. Absent some supporting evidence, the appellant's assertion that he acted in self-defense is little more than a bald assertion worthy of little credence, especially because appellant's use of a gun in response to the situation is facially an excessive use of force. The medical records would support

appellant's allegation that his use of force was in response to an attack by the complainant. The time lag spoken of by counsel goes only to the weight which the court might put on the evidence. Thus, I similarly conclude that this reason fails to adequately explain counsel's failure to investigate and to obtain the medical records.

Therefore, I would find that counsel was ineffective.

Consequently, I would vacate the judgment of sentence and remand the case for a new trial so that the appellant can be afforded the assistance of effective counsel.