J-A25045-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA     :     IN THE SUPERIOR COURT OF
                                 :              PENNSYLVANIA
                                 :
            v.                   :
                                 :
                                 :
                                 :
RALPH JUSTIN CARTER             :
                                 :
            Appellant            :     No. 22 WDA 2021

Appeal from the PCRA Order Entered November 24, 2020
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0008812-2012

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FEBRUARY 4, 2022**

Ralph Justin Carter appeals from the order that, following a hearing, dismissed his amended first Post Conviction Relief Act ("PCRA") petition. **See** 42 Pa.C.S.A. §§ 9541-9546. On appeal, Carter presents four interrelated issues premised on the allegation that his trial counsel was ineffective for the way that it handled certain audio recordings taken of Carter while he was in jail. In particular, Carter contends that because trial counsel never had the opportunity to review the alleged audio recordings' contents, counsel improperly provided Carter with advice that ultimately led to him not testifying on his own behalf. Although we are cognizant of both the Commonwealth's timing as it pertains to the audio recording disclosure and trial counsel's corresponding actions after becoming aware of those recordings, we conclude

_____

* Retired Senior Judge assigned to the Superior Court.

that Carter has failed to demonstrate ineffective assistance of counsel. Accordingly, we affirm.

The facts underpinning Carter's convictions are not particularly relevant to this present appeal. However, by way of background, drugs, drug paraphernalia, and a firearm were found in Carter's residence. These items were uncovered after the office overseeing Carter's parole had been "tipped off" as to their existence by an informant.

At trial, Carter maintained that the contraband found at his home were not his and that a corresponding confession he provided to police was unreliable. To supplement his defense, Carter originally insisted that he wished to testify on his own behalf despite having prior *crimen falsi* convictions.

During an afternoon colloquy with the court over that desire to testify, a recess was taken for Carter to discuss with trial counsel his right to call character witnesses. At recess, the Commonwealth informed Carter and trial counsel that it had audio recordings of calls Carter had made while he was inside the jail. The ninety-two minutes of recordings, which the Commonwealth had just received that morning and reviewed during that day's lunch break, included calls made on the eve of and during trial and were asserted by the Commonwealth to contain both incriminating statements as

well as language instructing witnesses how to testify.[1]

Trial counsel stridently advised Carter as to the inherent problems he faced if he were to testify on his behalf. Counsel believed that, based on the Commonwealth's summary of the recordings' contents, they would be admitted into evidence notwithstanding any kind of objection. Counsel also was cognizant of Carter's *crimen falsi* convictions. To counsel, both situations had a high propensity to lead to impeachment.

Following the court's recess, Carter decided to knowingly waive his right to testify on his own behalf after being apprised by counsel and the court of his right to do so. Carter indicated that it would not be in his best interest to testify given that it would introduce the jail recordings to the jury and additionally expose his past criminal record.

Ultimately, a jury convicted Carter of possessing drug paraphernalia, possessing a controlled substance, possessing a controlled substance with the intent to deliver, and possessing a firearm as a person not able to possess.[2] Resultantly, Carter was sentenced to eight to sixteen years of incarceration, which would subsequently be reduced to seven years, two months to fourteen years, four months of incarceration after pursuing a direct appeal from his judgment of sentence.

---

[1] The Commonwealth never furnished trial counsel with the recordings nor any kind of transcript stemming from those calls. Later, too, it would be stated that at least some portions of the tapes were irrelevant for trial purposes.

[2] **See** 35 P.S. § 780-113(a)(32); 35 P.S. § 780-113(a)(16); 35 P.S. § 780-113(a)(30); and 18 Pa.C.S.A. § 6105(a).

Following his direct appeal, Carter filed a *pro se* PCRA petition. The court appointed PCRA counsel who thereafter found that Carter raised no non-frivolous claims in his petition. Correspondingly, PCRA counsel filed a no-merit letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*), wherein counsel requested permission from the court to withdraw. The court noticed its intent to dismiss Carter's petition without a hearing, giving him twenty days to respond. After that time had elapsed without a response, the court dismissed his petition, deeming it to be patently frivolous.

Carter then filed a *pro se* notice of appeal seeking redress in this Court, asserting that he never received notice of the court's intent to dismiss his petition without a hearing. Moreover, Carter claimed that he did not timely receive PCRA counsel's no-merit letter. The Commonwealth conceded that Carter had not received the court's notice of its intent to dismiss his petition. Predicated on this concession, this Court vacated the PCRA court's order so that a new notice of intent to dismiss could be issued. This new notice gave Carter twenty days to raise any challenges to his counsel's no-merit letter.

After that, Carter filed a *pro se* amendment to his PCRA petition, which raised several claims of ineffective assistance of counsel. Carter's petition was ultimately dismissed without a hearing. Following dismissal, Carter filed another *pro se* notice of appeal, which alleged that the PCRA court erred by not conducting a hearing on his trial counsel's handling of the jail recordings. This Court ascertained that, given the existence of unresolved questions of

fact related to those recordings, the PCRA abused its discretion by dismissing Carter's petition without a hearing. ***See Commonwealth v. Carter***, 1105 WDA 2019 (Pa. Super., May 27, 2019) (unpublished memorandum). We consequently ordered the appointment of counsel on Carter's behalf to conduct an evidentiary hearing on his ineffectiveness claims.

New PCRA counsel, among other things, filed a motion *in limine* seeking to preclude the Commonwealth from offering the jail recordings at the evidentiary hearing. This motion was denied. In the end, after the court received testimony from Carter, Carter's trial counsel, and the Commonwealth, it dismissed his petition, finding no merit to any of his ineffectiveness contentions.

After this disposition, Carter filed a notice of appeal. The relevant parties have complied with their respective obligations under Pennsylvania Rule of Appellate Procedure 1925, and as such, this appeal is ripe for review.

On appeal, Carter presents four separate questions for review. However, all four questions fall under the auspice of claiming that his trial counsel was ineffective. Distilled down, Carter claims that counsel was ineffective given that, without having reviewed the tapes: (1) it provided advice leading to Carter waiving his right to testify; (2) it determined that the tapes would be admissible; and (3) it did not object to the Commonwealth's late disclosure of evidence. ***See*** Appellant's Brief, at 5-6. In addition, Carter avers that the PCRA court erred in denying his motion *in limine* because: (1) the content of the tapes was prejudicial; and (2) the specific language used in those tapes was

not known to counsel when it provided Carter with advice. ***See id***., at 6.

Preliminarily, we note that this Court reviews the denial of a PCRA petition based on whether the record supports the PCRA court's findings. ***See Commonwealth v. Fears***, 86 A.3d 795, 803 (Pa. 2014). In addition, we ascertain whether such a denial is free from legal error. ***See id***. If the record supports the PCRA court's findings, this Court is very deferential to the lower court's ultimate determination. ***See Commonwealth v. Boyd***, 923 A.2d 513, 515 (Pa. Super. 2007). Legal conclusions, however, are not treated with that same corresponding deference. ***See Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012).

As to a claim asserting ineffective assistance of counsel, we are guided by a well-settled set of precepts:

> We presume counsel's effectiveness, and an appellant bears the burden of proving otherwise. To establish ineffectiveness of counsel, a PCRA petitioner must plead and prove: his underlying legal claim has arguable merit; counsel's actions lacked any reasonable basis; and counsel's actions prejudiced him. Failure to satisfy any prong of the ineffectiveness test requires dismissal of the claim. Arguable merit exists when the factual statements are accurate and could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

***Commonwealth v. Urwin***, 219 A.3d 167, 172 (Pa. Super. 2019) (internal citations and quotation marks omitted). As to what constitutes "reasonable basis," "[t]he test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly

greater potential chance of success." ***Commonwealth v. Stewart***, 84 A.3d 701, 707 (Pa. Super. 2013) (citation omitted). As such, "[c]ounsel's decisions will be considered reasonable if they effectuated his client's interest." ***Id***. (citation omitted).

Carter asserts that "the crux of this appeal is whether [he] knowingly and intelligently waived his right to testify on his own behalf during his jury trial." Appellant's Brief, at 19. "The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel." ***Commonwealth v. Nieves***, 746 A.2d 1102, 1104 (Pa. 2000). In this specific domain, "the appropriate standard for assessing whether a defendant was prejudiced by trial counsel's ineffectiveness regarding the waiver of his right to testify is whether the result of the *waiver proceeding* would have been different absent counsel's ineffectiveness[.]" ***Commonwealth v. Walker***, 110 A.3d 1000, 1005 (Pa. Super. 2015) (emphasis in original) (contrasting this assessment with the much different consideration of "whether the outcome of *the trial itself* would have been more favorable had the defendant taken the stand[]"). However, ***Walker*** also reinforces the broader ineffective assistance of counsel test by requiring a defendant to demonstrate underlying merit to his or her claim as well as show that trial counsel had no reasonable basis in advising that defendant not to testify. ***See id***.

While it may be true that "where a defendant voluntarily waives his right

to testify after a colloquy, he generally cannot argue that trial counsel was ineffective for failing to call him to the stand," **Commonwealth v. Rigg**, 84 A.3d 1080 (Pa. Super. 2013) (citation omitted), there can also be "limited instances where a colloquy does not preclude trial counsel from being held ineffective based on erroneous advice provided to his client about testifying[.]" **Id**. Specifically,

> [i]n order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice *so unreasonable* as to vitiate a knowing and intelligent decision to testify on his own behalf.

**Nieves**, 746 A.2d at 1104 (emphasis added).

We agree with Carter that the record reflects his original desire to testify. **See** N.T., 10/22/13, at 147. However, after the recess break, Carter was "heavily influenced" by the Commonwealth's disclosure of the jail tapes and his resulting conversation with trial counsel, who believed the tapes to be admissible. **See id**., at 151. Although he still wanted to testify, Carter "decided it's not in [his] best interest to take the stand." **Id**., at 152. Carter made this decision after the court explained that if he were to testify, his criminal record and the taped conversations might have been placed before the jury. **See id**.

Carter relies on **Commonwealth v. Stewart** for the proposition that any kind of assessment as to the admissibility of the tapes was "clearly unreasonable as [trial counsel] never reviewed the information contained on the [j]ail [r]ecordings." Appellant's Brief at 22. In **Stewart**, this Court found

that trial counsel was ineffective as it "failed to substantively interview either [that defendant] or his alibi witness, and declined to present the possible alibi witness, despite permitting [that defendant] to testify as to the alibi." 84 A.3d at 712. Other than citing to this case, Carter does not explain the legal import of **Stewart** as it relates to his own case, notwithstanding the fact that both dealt or deal with, at a surface level, ineffective assistance of counsel. Carter further utilizes **Commonwealth v. Nieves** to reinforce the notion that erroneous advice, such as advising a client not to testify for fear of impeachment based on prior convictions that were not *crimen falsi*, constitutes a vitiation of a defendant's knowing right to testify on his own behalf. **See** 746 A.2d at 1104-05.

The "misinformation" Carter contends is present in this case is trial counsel relaying to Carter and the court that he believed the tapes would probably be admitted. To Carter, the fact that some segments of the recordings were admittedly irrelevant is congruent with counsel's incorrect advice and misstatement of law in **Nieves** as to what constitutes a *crimen falsi* conviction or what crimes could lead to impeachment on that basis.

Although Carter disputes that he "instructed witnesses how to testify or otherwise engaged in improper activity during the calls[,]" Appellant's Reply Brief, at 5 n.1, nowhere does he unequivocally state that any or all of the calls could not or would not have been admitted at trial. Instead, Carter merely suggests that because *some portions* of the calls would not have been relevant

(and therefore not admissible)[3], which is understandable given that the tapes spanned ninety-two minutes in length, it tainted *any* advice his attorney gave to him regarding his ability to testify.

While Carter initially wanted to testify despite his *crimen falsi* convictions and against his counsel's wishes, **see** PCRA Hearing, 11/6/20, at 14, the disclosure of the tapes unquestionably influenced Carter's final decision. However, when juxtaposed against the **Nieves** case, we cannot see how Carter's trial counsel, who already did not want Carter to testify, explaining to Carter that it was not a good idea for him to testify on his own behalf while equipped with knowledge of his *crimen falsi* convictions as well as having a general sense of the tapes' damaging contents, rises to the level of being analogous to a complete misstatement of law. As such, trial counsel's specific advice, calculated based on multiple pitfalls Carter was sure to face if he were to testify, was not "so unreasonable" as to vitiate Carter's knowing waiver of his right to testify.

In a more practical sense, Carter highlights that admission of the tapes would have required a judicial ruling under Pennsylvania Rule of Evidence 403, which allows the court to exclude relevant evidence if "its probative value is outweighed by the danger of … unfair prejudice[.]" Pa.R.E. 403. To Carter,

---

[3] For example, at the PCRA hearing, the Commonwealth indicated that it would not have offered into evidence a call involving a discussion of the jurors taking part in Carter's case as it was not relevant. **See** PCRA Hearing, 11/6/20, at 111.

trial counsel's determination that the tapes would be admissible and harmful cannot amount to reasonable advice because counsel had never taken the time to review them. Furthermore, as alluded to above, the Commonwealth's subsequent disclosure at the PCRA hearing indicated that portions of the jail recordings were irrelevant. Accordingly, to Carter, such an admission by the Commonwealth further reinforces the ambiguous nature of whether the recordings would have been admissible at all.

While the actual content of the phone recordings would not be placed into the record until after his trial, we are at a crossroads in evaluating, through the lens of the PCRA court's determination, what trial counsel knew at the time, what the Commonwealth disclosed to trial counsel and when, and the import of the now-known statements made by Carter in the phone calls. Clearly, as will be outlined below, Carter did make statements that could be construed as an attempt to manipulate witness testimony, which could therefore have formed the basis to impeach his credibility. **See Commonwealth v. Reid**, 811 A.2d 530, 550 (Pa. 2002). As the PCRA court found the Commonwealth credible insofar as it accurately disclosed the jail calls' contents and trial counsel to be credible when it utilized that information to further reinforce the idea that it was a bad idea for Carter to testify, we find such a determination to be supported by the record and not unreasonable under the circumstances.

Relatedly, Carter believes that there was "no strategic justification for

providing advice [to him] and [placing] a statement on the record regarding the admissibility of evidence which was never reviewed." Appellant's Brief, at 34. Although such a holding was formulated in the context of exculpatory information,

> [t]he Sixth Amendment guarantee of effective assistance of counsel assumes, since counsel is presumed effective, that the attorney will read the materials and find the helpful information. This is why ineffectiveness claims can be premised upon a failure to adequately investigate and review the materials provided to the defense. Thus, the onus is on counsel to review all materials to which she has access.

*Commonwealth v. Maldonodo*, 173 A.3d 769, 783 (Pa. Super. 2017).

In *Commonwealth v. Mabie*, our Supreme Court found that counsel's reliance on the Commonwealth's file of his client amounted to ineffective assistance because it foreclosed that counsel from questioning other witnesses and reviewing his client's hospital records, two avenues that "may have established a defense[.]" 359 A.2d 369, 374 (Pa. 1976). Because "no such claim of strategy [could] be attached to a decision not to interview or make an attempt to interview eyewitnesses prior to trial[, …] no reasonable basis designed to effectuate [his client's] interest [could] be attributed to counsel's failure to question [those] witnesses." *Id*., at 374-75. Moreover, use of "the prosecution's file [was] not a substitute for an independent investigation by defense counsel." *Id*., at 374; *see also Commonwealth v. Baxter*, 640 A.2d 1271, 1274 (Pa. 1994) (stating that trial counsel's reliance on the Commonwealth to provide her with discovery of information relevant to the

veracity of the Commonwealth's witnesses proved ineffective as she failed to investigate a certain witness whose story turned out to be factually inaccurate).

Unlike **Mabie**, the case presently before this Court is not one in which trial counsel failed to interview a witness nor one where counsel extensively relied on a file constructed by the Commonwealth. Instead, trial counsel, in the context of already having explained to Carter that it was not wise for him to testify, believed the Commonwealth's representation as to the tapes' contents, **see** PCRA Hearing, 11/6/20, at 39-40, the substance of which ultimately turned out to be, at least as it relates to portions of the tapes, true. Trial counsel, having had previous experiences with that Commonwealth's attorney, trusted the information he received and was cognizant of the Commonwealth's duty, through its attorneys, not to falsify evidence as officers of the court. **See id**., at 40. Under these circumstances, we do not see how counsel provided unreasonable advice.

It bears repeating that the genesis of trial counsel's advice for Carter not to testify did *not* stem from the Commonwealth's disclosure of the jail tapes. Trial counsel knew of Carter's prior *crimen falsi* convictions and believed that Carter would not make a good witness. The tapes, however, reinforced trial counsel's position that testifying would not be in Carter's best interest. Although it took the existence of the tapes for Carter to ultimately agree with his counsel, we see nothing wrong with trial counsel's multi-faceted, if not

- 13 -

accumulative, approach in advising Carter of the detriments he could face should he have taken the stand on his own behalf.

Carter also faults the Commonwealth's late disclosure of the jail tapes, having presented knowledge of their existence to Carter and his counsel five hours after the Commonwealth's receipt of those tapes. Based on this late disclosure, Carter claims trial counsel was ineffective for failing to object to those tapes' admissibility.[4]

The Commonwealth was mandatorily obligated to disclose the jail tapes pursuant to Pennsylvania Rule of Criminal Procedure 573(B)(1)(g). Given the Commonwealth's continuing duty to disclose, which operates throughout trial, the Commonwealth had to "promptly notify [Carter] or the court of [any] additional evidence, material, or witnesses." Pa.R.Crim.P. 573(D).

Based on the Commonwealth's testimony, on the day it disclosed the tapes to Carter mid-afternoon, it received them first thing that morning and then listened to them during the lunch hour that corresponded with Carter's trial.[5] Carter claims that this timing "all but assured that trial counsel would not have an opportunity to review [the tapes]." Appellant's Brief, at 36. To

_____

[4] As there was no attempt by the Commonwealth to admit the tapes at trial, it is unclear how such an objection would have been made at that moment.

[5] The Commonwealth indicated that it was possible that it did not have physical possession of the tapes until after Carter's trial had started that morning. **See** PCRA Hearing, 11/6/20, at 116. Under this timeline, the earliest that the tapes could have been reviewed was during the lunch hour.

reinforce this position, Carter posits that the Commonwealth engaged in an impermissible "trial by ambush." *Id*.

In **Commonwealth v. Ulen**, our Supreme Court vacated a conviction after the Commonwealth admitted into evidence an incriminating phone call of a defense witness midway through trial. **See** 650 A.2d 416, 417 (Pa. 1994). The discovery of the tape "had not been proffered [to defense counsel] prior to trial." **Id**. However, it was admitted *after* that defense witness had provided testimony. As it almost certainly had an impact on whether defense counsel would have called that witness had the tapes been disclosed prior to the witness's testimony, such a failure to disclose warranted the award of a new trial.

Here, however, the Commonwealth, at Carter's trial, made no attempt to admit these tapes, and the record reflects that it was not possible for the Commonwealth to provide Carter with those tapes prior to his trial. Therefore, the factual circumstances are eminently distinguishable from **Ulen**. Furthermore, Carter provides no authority for the proposition that a "trial by ambush" can occur even if the specifically contested evidence never goes before the court or jury.

To the extent that Carter implies that the Commonwealth should have provided the jail tapes to Carter immediately after receiving them, Carter does not offer any support to reinforce this contention, too. Carter's suggestion necessarily means that disclosure was warranted even prior to the

Commonwealth's review of those tapes. It strains credulity to obligate the Commonwealth to produce such material prior to it making an assessment as to its contents.

Although, obviously, the Commonwealth had knowledge of the tapes' existence hours before it disclosed them to Carter, it did not, nor could not, have decided the tapes' trial materiality prior to review. **See** Pa.R.Crim.P. 573(B)(1). Following the timeline of events as they happened on that day, the Commonwealth then needed time to review the tapes itself, which it did during the lunch break, before then conveying a general understanding of the tapes' contents to Carter one to two hours later. While the timing was not ideal given the timing of the calls themselves in addition to Carter's trial schedule preventing an immediate review, we do not believe that the Commonwealth engaged in an "unnecessary delay in disclosure," Appellant's Reply Brief, at 8, serving to prohibit Carter and his counsel from "having a meaningful opportunity to review evidence the Commonwealth intended to offer should [he] testify." *Id*.

Finally, Carter, armed with the language this Court used in remanding this case, contends that entering the jail calls into evidence at the PCRA evidentiary hearing was irrelevant, if not prejudicial. **See** Appellant's Brief, at 39, 41 (writing that the jail calls' "content had no bearing on the advice provided to [] Carter which serves as the basis of the ineffective assistance of counsel claim"). Instead, when ruling on the motion *in limine* seeking to

prevent the admittance of those tapes, Carter believes that the PCRA court should have evaluated counsel's performance predicated on the facts as they existed at the time, namely without the benefit of counsel knowing the specific conversations contained in jail tapes.

As Carter claims this evidentiary ruling was erroneous, he asserts that it must be assessed under the harmless error standard. *See* Appellant's Brief, at 41. Even assuming such an admission was incorrect, the tapes *do*, in fact, corroborate counsel's nondeficient performance at the time, lending credence to the notion that any resulting impact was harmless. Stated differently, the content of the tapes was vital in corroborating the Commonwealth's position that the tapes contained inculpatory statements that could lead to impeachment.

As the lower court surmised, one of the key issues at the PCRA hearing was whether the Commonwealth "had accurately summarized the content to trial counsel and whether the recordings could be admitted at trial." Trial Court Opinion, 4/16/21, at 6. The court continued: "[f]or this [c]ourt to determine if counsel was ineffective for accepting the proffer from [the Commonwealth] that the recordings were damaging, this [c]ourt would need to review the recordings and make that determination for itself." *Id*.

When the court listened to the calls at the PCRA hearing, it heard, *inter alia*, Carter telling his friend to inform Carter's sister, a witness Carter wanted to have testify on his behalf, that she needed to be ready and that he would

"tell her everything she needed to say." Jail Call 1, at 11. In a separate call directly to his sister, Carter asked: "This is all I want you to testify to, you hear me?" Jail Call 5, at 4. Later in that same conversation, Carter stated: "I need you to manipulate the whole situation so this shit go right … I can't coordinate this. … There's only so many calls I can make." *Id*., at 27-28.

The content of these calls was crucial in the PCRA court's chain of determinations. First, the calls, by their very content, demonstrated that Carter's language was, at a minimum, legally problematic. Second, the Commonwealth accurately disclosed to trial counsel that those calls had a high propensity of leading to impeachment. Third, trial counsel's corresponding decision to, again, emphasize the detriments Carter would likely have faced should he have testified on his own behalf was reasonable given the context of counsel's pre-existing and well-founded opposition to him testifying as well as the Commonwealth's revelatory, and largely accurate, description of the tapes it intended to introduce.

Accordingly, as we find no basis to conclude that trial counsel was ineffective, we affirm the PCRA court's order dismissing Carter's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/4/2022