431 A.2d 240
**COMMONWEALTH of Pennsylvania**
v.
**Freddy L. BANDY, Appellant.**
Supreme Court of Pennsylvania.
Submitted April 21, 1981.
Decided July 2, 1981.

Patrick J. Broderick, Philadelphia, for appellant.

Robert B. Lawler, Mattleman, Asst. Dist. Attys., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

WILKINSON, Justice.

On August 19, 1974, appellant appeared before the Court of Common Pleas of Philadelphia and pleaded guilty to robbery and to murder generally. The "summary of testi-

mony" presented by the Commonwealth following the court's acceptance of the plea indicated that on April 11, 1974 appellant entered Stoney's Bar with two others and, at knifepoint, forced the bartender to remove money from the cash register. Appellant then stabbed the bartender in the stomach. After being stabbed, the bartender grabbed a rifle which he kept behind the bar and shot appellant in the back. Both men collapsed behind the bar. The bartender died eleven days[1] later from the stab wound. Appellant was charged with possessing instruments of crime, criminal conspiracy, robbery and murder in connection with this incident.

Appellant entered his plea pursuant to a plea bargain wherein the Commonwealth nol prossed the conspiracy and possessing instruments of crime charges and certified that the homicide rose no higher than murder of the third degree. Appellant was then sentenced to concurrent terms of ten to twenty years on both the murder and the robbery charge. No direct appeal was taken from the judgments of sentence.

Appellant subsequently filed a petition for relief under the Post Conviction Hearing Act[2] (PCHA). Amended petitions were also filed raising various allegations of ineffective assistance of counsel. An evidentiary hearing was held on March 26, 1979 and relief was denied on January 11, 1980. This appeal, which raises the single issue of whether appellant received effective assistance of counsel before entering his plea, followed.

Specifically, appellant contends that his guilty plea was not knowingly and voluntarily entered in that is was based solely upon the advice of counsel who was ineffective in failing to conduct an independent pretrial investigation of the case before a recommending that appellant accept the

1. In appellant's brief it is inaccurately stated that death occurred eleven *weeks* later. The stabbing occurred on April 11, 1974 and death occurred on April 22, 1974.

2. Act of January 25, 1966, P.L. (1965) 1580, *as amended*, 19 P.S. § 1180–1 et seq., repealed by Section 2(2)[1397] of the Act of April 28, 1978, P.L. 202, repeal effective June 27, 1980, as amended by Section 1 of the Act of June 26, 1980, P.L. 265, No. 77, which delayed repeal until June 27, 1981.

negotiated plea. Our consideration of this issue necessarily requires an inquiry into the facts and circumstances within counsel's knowledge at the time of the plea, as disclosed in the record of the PCHA proceedings.

On June 19, 1974 counsel examined the prosecution's file, including several statements contained therein, and spoke to the chief of homicide concerning the case. The preliminary hearing, scheduled for that same day, was waived.

Two of the statements contained in the prosecution's investigative file were obtained from appellant's alleged co-conspirators, both of whom were very young (ages thirteen and fourteen)[3] and were close friends of appellant. The Commonwealth asserted that one of the co-conspirators was prepared to testify that appellant told her, "I should stick this bar up," and that she then saw him walk into the bar pointing a knife at the decedent. The other co-conspirator was prepared to corroborate appellant's statement of his intention to rob the bar.

The prosecution was also in possession of statements from two witnesses, one of whom would have testified that he saw appellant, after the shooting, lying behind the bar with a knife beside his hand. The other witness would have identified appellant as the person who robbed the bar. None of the Commonwealth's witnesses actually saw the stabbing.

Counsel also examined police accounts of the incident including a statement made by the decedent following the stabbing to the effect that he had just shot his attacker and that he could be found lying behind the bar. Counsel testified that he believed this statement would be admissible under the res gestae exception to the hearsay rule.

After reviewing the District Attorney's file, counsel met with appellant on June 29, 1974. Appellant provided no exculpatory information during the three hour session. A July 16, 1974 investigation of the crime scene also proved fruitless.

3. Appellant was seventeen years old when the crime was committed and entered the negotiated plea on his eighteenth birthday.

On July 17, counsel saw for the first time an inculpatory statement allegedly given by appellant to the police within one hour of the stabbing. Suffice it to say that this statement would almost certainly have been suppressed, had such a motion been filed. Counsel felt, however, that this would not have significantly enhanced appellant's defense.

Counsel admitted that he had not interviewed or attempted to interview any of the individuals whose statements he had seen. Additionally, counsel never discussed with any medical authority the cause of death of the bartender. Further, the autopsy report had not been examined prior to the guilty plea but counsel had seen a copy of the "Findings of the Medical Examiner" which set forth the nature of the wound and the manner of death.

After conducting his review of the case, counsel urged appellant to plead guilty based upon what he perceived to be an "overwhelming abundance of evidence" against appellant. Counsel felt that all of the statements together were "extremely damaging" and that the entry of a plea would avoid subjecting appellant to the risk of a first degree murder conviction which he felt would have been "almost automatic."

Appellant maintains that counsel did not fulfill his duty to independently investigate the case by merely relying upon the apparent strength of the case as revealed in the prosecutor's file. Because he failed to personally interview the witnesses, it is argued, counsel gave appellant no more independent guidance in choosing to plead guilty than the prosecutor would have provided.

In support of this proposition, appellant relies exclusively on *Commonwealth v. Mabie*, 467 Pa. 464, 359 A.2d 369 (1976). *Mabie*, however, is distinguishable in several respects and does not compel the grant of a new trial here. In that case, the defendant was sentenced upon a guilty plea to second degree murder. This Court held that the defendant was denied effective representation where counsel, relying entirely on the District Attorney's file, failed to make any attempt to confirm defendant's contention that he had been

hospitalized immediately after the killing for injuries received in the fight and where counsel discounted the defense of self-defense without questioning eyewitnesses other than defendant and his brother.

In holding that the prosecution's file was not a substitute for an independent investigation by defense counsel, we reasoned, most significantly, that

> [s]ince discussions with witnesses and a review of Mabie's hospital records *may have established a defense* and *the pursuit of such a possible defense* was curtailed only upon the basis of information in the Commonwealth's file, counsel's decision not to investigate either or both avenues cannot be said to have a reasonable basis designed to effectuate his client's interest.

*Id.,* 467 Pa. at 474, 359 A.2d at 374 (emphasis added).

Instantly, appellant does not claim, nor do the facts suggest, the existence of a possible defense which counsel here has failed to explore. Furthermore, counsel in this case had personal knowledge of five statements,[4] made by appellant's co-conspirators and by various other witnesses, which did not in any way aid his defense, but which, in fact, proved to be extremely damaging. Finally, counsel had examined the "Findings of the Medical Examiner" which indicated that the cause of the bartender's death was due to a stab wound of the abdomen.[5] Thus, under the facts of this case, we find that counsel had ample reason to believe that interviews with the witnesses were unnecessary and, in fact, would have proved fruitless. *See Commonwealth v. Smith,* 490 Pa. 380, 416 A.2d 986 (1980); *Commonwealth v. Arthur,* 488 Pa. 262, 412 A.2d 498 (1980), *cert. denied,* 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 79 (1980).

 There is no indication in this case that a more intensive investigation than was conducted would have de-

---

4. This does not include the alleged statement made by appellant shortly after the incident.

5. For unknown reasons, a complete autopsy report was not available at the time of the plea colloquy.

veloped more than was already known. Moreover, we reiterate that "a finding of ineffectiveness [can] never be made unless [it can be] concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized." *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 605 n.8, 235 A.2d 349, 353 n.8 (1967). We simply cannot reach such a conclusion here and therefore must reject appellant's claim that his guilty plea was based upon the ineffective assistance of counsel.

The order of the Court of Common Pleas of Philadelphia denying post-conviction relief is affirmed.