515 A.2d 832

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Lawrence CHRISTY, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 16, 1985.

Decided Sept. 25, 1986.

Reargument Denied Dec. 20, 1986.

494

Gary L. Costlow, Michael L. Stibich, Johnstown, for appellant.

Gerard Long, Dist. Atty., Dennis M. McGlynn, Patrick T. Kiniry, Asst. Dist. Attys., Ebensburg, for appellee.

Before NIX, C.J., and LARSEN, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

Lawrence Christy was found guilty by a jury of murder of the first degree for the killing of James Volk. A sentencing hearing was held as required by 42 Pa.C.S. § 9711[1] and the jury determined that Lawrence Christy be sentenced to death.

The case is now before us on automatic appeal pursuant to 42 Pa.C.S. § 9711(h)(1).[2]

The facts of the case are as follows: According to Appellant's own testimony, in the early morning hours of June 16, 1980, he left a friend's house and decided that he was going to rob the Italian Men's Society Club in Gallitzan, Cambria County. He went there but found that he could not gain entry. He then went to the Oriental Ballroom and "jimmied" open a window with a knife and went inside. He was unaware that the Oriental Ballroom had a night watchman.

1. 42 Pa.C.S. § 9711(a)(1) provides:
 (a) Procedure in jury trials—(1) After a verdict of murder of the first degree is recorded and before the jury is discharged, the court shall conduct a separate sentencing hearing in which the jury shall determine whether the defendant shall be sentenced to death or life imprisonment.

2. Pursuant to 42 Pa.C.S. § 9711(h)(1), a sentence of death shall be subject to automatic review by this Court.

Once inside, he proceeded to go down the side of the ballroom towards the bar area when he heard footsteps coming from that direction. Appellant hid under a table until the sound of the footsteps became inaudible, indicating that the person had left the area. Appellant then came out from underneath the table and decided to leave the premises when he heard the footsteps again coming through the barroom. At that point, Appellant stated that he jumped up and put his hands in the air and said, "I give up." According to Appellant, the person then said, "You son of a bitch hippie," and shot at Appellant, striking him on the wrist and knocking him to the floor. That person was 69–year old James Volk, the security guard at the Oriental Ballroom. According to Appellant, Mr. Volk then placed the gun on the bar and started walking towards the end of the bar. Appellant then jumped up and grabbed the gun from the bar. Mr. Volk turned around and started to run toward Appellant.

Appellant testified as follows:

I picked up the gun. He came running at me. I said, please don't. Don't. And I shot once and didn't know if I hit him or not. He kept on coming like a racing bull. I shot him again and he fell down.

... [H]e was on his knees and he was choking and gagging. I stepped around and I said why, why, and I shot him in his head because to me I felt that he was dying and I didn't want ... to me he was suffering.

Appellant then took Mr. Volk's wallet and left.

Lawrence Christy confessed to the murder both in an interview with Pennsylvania State Trooper Cimbalista and again on the witness stand during trial.

The jury found Appellant guilty of murder of the first degree. At the sentencing hearing, the jury determined that Appellant be sentenced to death after finding two aggravating circumstances and no mitigating circumstances. The aggravating circumstances were that the victim was a prosecution witness to a murder or other felony committed by the defendant, and was killed for the purpose

of preventing his testimony against the defendant in any grand jury or criminal proceedings involving such offenses;[3] and the defendant committed a killing while in the perpetration of a felony.[4]

Appellant's first argument on appeal is that he was denied effective assistance of counsel. Appellant's court-appointed trial counsel presented a defense that the first two shots fired by Appellant were in self-defense and that the last shot was fired as a result of the diminished capacity of Appellant. Appellant's new counsel for this appeal argues that this defense was unreasonable and that as a result of trial counsels' inexperience, they failed "to recognize that the only viable defense was psychiatric."

We disagree that trial counsel were ineffective. When confronted with a claim of ineffective assistance of counsel, a reviewing court must first ascertain whether the issue underlying the charge of ineffectiveness is of arguable merit and, if so, it must be determined whether the course chosen by counsel had some reasonable basis designed to serve the interests of his client. *Commonwealth v. Stoyko*, 504 Pa. 455, 475 A.2d 714 (1984); *Commonwealth v. Wade*, 501 Pa. 331, 461 A.2d 613 (1983); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). There is a presumption in law that counsel is effective. *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981). The standard governing ineffectiveness claims was set forth by this Court in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967):

Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is not whether other alternatives were

---

3. 42 Pa.C.S. § 9711(d): The victim was a prosecution witness to a murder or other felony committed by the defendant and was killed for the purpose of preventing his testimony against the defendant in any grand jury or criminal proceeding involving such offenses.

4. 42 Pa.C.S. § 9711(d). The defendant committed a killing while in the perpetration of a felony.

more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that the trial counsel's decision had any reasonable basis.

*Id.*, 427 Pa. at 604, 235 A.2d at 352–53. We also noted in *Maroney* that:

... for relief to be granted, *Appellant* must demonstrate that counsel's ineffectiveness worked to his prejudice....

*Commonwealth ex rel. Washington v. Maroney, supra,* 427 Pa. at 605, n. 8, 235 A.2d at 353, n. 8. *See also, Commonwealth v. Bandy,* 494 Pa. 244, 431 A.2d 240 (1981). The Supreme Court of the United States has established the same standard pursuant to federal constitutional strictures in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) *reh. den.,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864.

An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.... Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. *Id.,* 466 U.S. at 691–92, 104 S.Ct. at 2067, 80 L.Ed.2d at 696.

■ Further, counsel will not be considered ineffective for failure to assert a meritless claim. *Stoyko, supra,* 504 Pa. at 472, 475 A.2d at 723.

With the *Maroney* standard in mind, we will address Appellant's itemized list of ineffectiveness.

Appellant argues on appeal that trial counsel were ineffective for failing to retain a "defense oriented" psychiatrist to testify at trial.

The record of this case reveals that Appellant's trial counsel did earnestly pursue the option of insanity as a possible defense. The matter was raised in an Omnibus Pre-trial Motion for Relief filed by Appellant's trial attorneys. The omnibus motion contained *inter alia* a notice of

insanity defense and a motion for a psychiatric examination. The court issued an order directing that Appellant be examined at Farview State Hospital. The court directed that the psychiatric evaluation determine the following:

the defendant's capacity to understand the nature and object of the proceedings against him;

the defendant's capacity to comprehend his own condition from such proceedings;

the defendant's capacity to understand the nature of the punishment which might be inflicted upon him;

the defendant's capacity to confer with counsel in reference to such proceedings;

the defendant's capacity to make a rational defense; the probable effect of the trial on the defendant's physical and mental condition; and

whether the defendant, at the time of the commission of the act, was laboring under such defect of reason or from diseased mind as not to know the nature and quality of the acts he was doing or, if he did understand the nature and quality of his acts, that he did not know that what he was doing was wrong.

The examination of Appellant addressed itself to the questions posed by the court. Following the examination, the court issued subpoenas for the individuals who had conducted the examination, particularly Dr. Edward Olivier, and a summary of the evaluation was read into the record by the court as follows:

The patient is judged to have no functional mental illness and no significant mental disability. His characterologic and personality problems are severe and are considered to be totally resistant to modifications through any known form of treatment. He is considered to be entirely competent to stand trial and to cooperate with his attorney in the preparation of his defense. The patient is not considered to need further hospitalization and it is recommended that he be returned to the Cambria County Jail.

I could find no evidence whatsoever, either from the subject or from other sources, to suggest that he was not responsible under the M'Naghten Rules.

After the court stated that, in its opinion, the matter was settled, defense counsel requested the following:

MR. PARSEGHIAN: Your Honor, as to the matter of the insanity defense. I believe we are going to, in the interest of protecting our client's rights, have to call the examining physician and subject him to cross-examination and to determine whether or not, based on Mr. Christy's past history of involvement with illicit substances, he might have, at that point in time, been subject to a diminished capacity to understand what the nature and quality of his action was. I understand what the basis of the doctor's report is, but I would like to question him about it as to what sources he relied upon.

There was reference in there to reports from Hollidaysburg State Hospital and other facilities at which Mr. Christy was treated, but I believe the previous Farview record might not have been given due consideration and we would like to question the doctor as to exactly what was considered, what tests were performed, and what if any discussion was had with Mr. Christy pertaining to his use of drugs and other substances at the time of the offense in question. So we will have to pursue this defense, Your Honor.

The Court granted this request. However, Dr. Olivier was unable to appear for examination, and the court, on its own motion and with notice to the Commonwealth and defense counsel, ordered that the Appellant be examined by Dr. Hugh E. Chavern, a psychiatrist in Greensburg, Pennsylvania. The court directed that Dr. Chavern examine Appellant regarding the same questions posed to Dr. Olivier, including, again, the question of whether, at the time of the commission of the act, Appellant was laboring under such defect of reason, from disease of mind, as not to know the nature and quality of his acts, or if he did know what he was doing, did not know that it was wrong.

Copies of Dr. Chavern's report were given to both the Commonwealth and defense. A hearing was held in court in the form of a competency hearing with Dr. Chavern testifying and answering questions posed by the court, the prosecution, and both defense attorneys.

Dr. Chavern testified that, in his opinion, Appellant was not laboring under any defect of reason or disease of mind at the time he committed the crimes for which he was arrested. This opinion was based upon a reasonable degree of medical certainty.

Dr. Chavern also stated that, in his opinion, based on a reasonable degree of medical certainty, Appellant was competent to stand trial, able to deal with his attorney, understand the nature of the charges against him, and assist his counsel in making a rational defense. Defense counsel cross-examined Dr. Chavern extensively. Dr. Chavern testified at the competency hearing that he had testified for both the prosecution and defense in the past, and stated that he thought that, in the preponderance of instances, he had testified for the defense.

A hearing on the Motion for New Trial and In Arrest of Judgment was held on May 22, 1984, before the trial judge, the Honorable Eugene A. Creany. Testifying on the issue of ineffectiveness of counsel, defense attorney Parseghian stated that he had had contact with Dr. Chavern during the time he was a law clerk for the Honorable Caram J. Abood of the Cambria County Common Pleas bench. Attorney Parseghian had seen the doctor's work, seen him testify, and found him to be objective. In addition, he felt that Dr. Chavern, being from Greensburg, would be removed from the case.

For these reasons, defense counsel felt that he would give an objective opinion of the Appellant. Based on Dr. Chavern's report and testimony, as well as the report of Dr. Olivier, Appellant's trial attorneys decided not to pursue the insanity defense. We find no evidence of ineffectiveness in their decision.

In *Commonwealth v. Martinez,* 498 Pa. 387, 446 A.2d 899 (1982), we held that failure to mount an insanity defense did not constitute ineffectiveness where counsel considered the issue carefully and rejected it.

■ A decision by counsel not to take a particular action does not constitute ineffectiveness if it is based upon a reasonable conclusion that there will be no benefit, and is not the result of sloth or ignorance of available alternatives. *Commonwealth v. Blair,* 491 Pa. 499, 421 A.2d 656 (1980). See also, *Commonwealth v. Hubbard,* 485 Pa. 353, 402 A.2d 999 (1979).

■ Furthermore, we have held that "a finding of ineffectiveness can never be made unless it can be concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized." *Commonwealth v. Bandy,* 494 Pa. 244, 431 A.2d 240 (1981); *Commonwealth ex. rel, Washington v. Maroney,* 427 Pa. 599, 605 n. 8, 235 A.2d 349, 353 n. 8 (1967). Appellant does not allege that there existed any alternatives which offered greater success than the one chosen.

Additionally, we have made an independent review of the entire record and conclude that there were no alternatives which offered a potential for success greater than that utilized.

■ Another argument by Appellant concerning the ineffective assistance of counsel claim is that trial counsel were ineffective for allowing evidence of Appellant's prior incarcerations to be heard by the jury. Appellant specifically complains of two instances. The first involved the cross-examination of Commonwealth witness Robert DeRose by Defense Attorney Rulis.

MR. RULIS: "How long have you known Larry? You stated for two years, I believe, is that correct?"

MR. DeROSE: "It's been a few years."

MR. RULIS: "Would you consider him a friend?"

MR. DeROSE: "An acquaintance."

MR. RULIS: "How were you an acquaintance of Larry Christy? How did that develop?"

MR. DeROSE: "I met him up here in Ebensburg."

MR. RULIS: "How did you meet him?"

MR. DeROSE: "In the Cambria County —"

MR. RULIS: "How did you meet him?"

MR. DeROSE: "I was in there."

MR. RULIS: "Excuse me?"

MR. DeROSE: "I was in there and he was in there."

MR. RULIS: "The jail?"

MR. DeROSE: "Yes."

MR. RULIS: "No further questions."

At the hearing on post-trial motions, the defense attorney explained that he wanted to show that the witness had been in jail in order to attack his credibility. Although the attorney should have been able to accomplish this without revealing that Appellant had also been in jail, we find no prejudice to the defense in this instance.

The defense brought out at trial Appellant's long history of placement in mental institutions due to life-long drug and alcohol abuse, including a suicide attempt in jail. The defense attempted to show that this history culminated in a diminished mental capacity under the stress of the moment of the crime. In attempting to do this, evidence of Appellant's prior incarcerations was heard by the jury.

We find that any error that existed by this course of action did not prejudice Appellant and had no effect on the judgment in this case or on the balance of aggravating and mitigating circumstances. Here, Appellant testified at trial that his victim was on his knees, choking on his own blood. He then stated that:

I stepped around and I said why, why, and I shot him in his head because to me I felt that he was dying and I didn't want ... to me he was suffering.

Thus, Appellant admitted that the act of killing his victim was deliberate and premeditated. The defense attempted to establish that due to Appellant's diminished mental capacity

at the time of the killing, he did not act willfully. The jury was justified in disbelieving this defense and finding that he did act willfully, deliberately, and with premeditation beyond a reasonable doubt.

At the sentencing hearing, the jury found beyond a reasonable doubt that Appellant had committed the killing while in the perpetration of a felony; Appellant admitted during testimony that he committed the killing while in the perpetration of a burglary. The jury found no mitigating circumstances. We conclude that Appellant received constitutionally effective assistance of counsel under the *Maroney* standard.

■ Appellant also argues that defense counsel committed prejudicial error in failing to object to the following cross-examination:

MR. KINIRY: "So you have never been taken off the street and put into one of these facilities, have you?"

LARRY CHRISTY: "I can't remember if the Hollidaysburg one was."

MR. KINIRY: "Well, let's look when you went to Farview. You were in where? What prison were you in then?"

LARRY CHRISTY: "The first time I was in Huntingdon."

MR. KINIRY: "It's not too nice at Huntingdon, is it?"

LARRY CHRISTY: "It's not too nice in any prison."

MR. KINIRY: "That is a good point, because every time you go to prison, you do something which gets you put into one of these mental hospitals or drug rehabilitation clinics; isn't that true?

And when you spend your time in jail, you're in some kind of a hospital, it is a little nicer in the hospital than it is in the prison, isn't it, Larry?"

LARRY CHRISTY: "A couple of them, yes."

MR. KINIRY: "A little maybe cleaner sheets and nicer beds and better food?"

LARRY CHRISTY: "No, not ..."

MR. KINIRY: "Not the food, huh?"

LARRY CHRISTY: "Not the food, no, especially Farview."

MR. KINIRY: "Well, let's look at Farview. If you hadn't been in Farview those years you would have been sitting in Huntingdon, right?"

LARRY CHRISTY: "Huntingdon or—"

MR. KINIRY: "Or some other State Prison. But you get to stay in Farview and when your sentence was up they left you out, right?"

LARRY CHRISTY: "When my sentence was up they moved me out of the hospital, yes."

MR. KINIRY: "You got out?"

LARRY CHRISTY: "After several different channels."

MR. KINIRY: "And so how many times have you been through these drug rehabilitation programs now, Larry?"

LARRY CHRISTY: "I have been only through one drug rehabilitation center. I was told to go to other ones, but didn't go because of the times that I was in prison, when I did get out, I was only out 30 days, I went out high, stayed high until they caught me again."

MR. KINIRY: "So that is the story of Larry Christy's life. You get in trouble. You go to jail. You don't like to be in jail, so, you do something to get you into the hospital. You serve your time. You get back out on the street. You do something bad. You go back into jail. You go back into the hospital. We can't rehabilitate you, can we, Larry?" (Trial Transcript, Vol. 7, p. 27).

At the hearing on post-trial motions, defense counsel testified that he considered objecting, but felt that the questioning did not go beyond the scope of direct. We agree that defense counsel should have objected in this instance; however, we find no prejudice to Appellant by such failure. *Maroney, supra.*

In the instant case, we conclude that the factual findings were not affected by the failure of defense counsel to object to the above cross-examination. The entire evidentiary

picture concerning the act of the killing was Appellant's testimony, in which he stated that he shot his victim in the back of the head with the intent to kill him. Therefore, the jury's conclusion that Appellant was guilty of murder of the first degree had overwhelming support in the record and, thus, was unaffected by this error of defense counsel.

■ Appellant also argues that he was denied effective assistance of counsel due to the failure of his trial attorneys to develop a meaningful attorney-client relationship. This argument is without merit.

In *Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), it was held that there is no right to a meaningful attorney-client relationship. The Court stated:

> The Court of Appeals' conclusion that the Sixth Amendment right to counsel "would be without substance if it did not include the right to a *meaningful attorney-client relationship*," 649 F.2d [718] at 720 [9th Cir.1981] (emphasis added), is without basis in the law. No authority was cited for this novel ingredient and of course none could be. No court could possibly guarantee that a defendant will develop the kind of rapport with his attorney—privately retained or provided by the public—that the Court of Appeals thought part of the Sixth Amendment guarantee of counsel. Accordingly, we reject the claim that the Sixth Amendment guarantees a "meaningful relationship" between an accused and his counsel.

In this regard, we note that the trial judge made the following comment on the record concerning trial counsels' conduct:

> THE COURT: Mr. Christy, I have not had two lawyers who had solely by the petitions they have filed in your behalf exerted more effort in your behalf. And I feel that they have done an excellent job. They have even gone into matters which normally don't come to the attention of a Judge. For instance, you were in lock-up. They filed a petition to get you out of lock-up. You got out of lock-up. You wanted cigarettes and your candy or whatever it was, they exerted—because they came in and

did that for you doesn't mean that they came in and told me stories about you or anybody else. They came in in your interest. And I think you got what you wanted.[5]

Appellant's next arguments concern the introduction, at the sentencing hearing, of evidence concerning two of the three aggravating circumstances. The three aggravating circumstances presented were: "The victim was a prosecution witness to a murder or other felony committed by the defendant and was killed for the purpose of preventing his testimony against the defendant in any grand jury or criminal proceedings involving such offenses" (42 Pa.C.S. § 9711(d)(5)); "the defendant committed a killing while in the perpetration of a felony" (42 Pa.C.S. § 9711(d)(6)); and "the defendant has a significant history of felony convictions involving the use or threat of violence to the person" (42 Pa.C.S. § 9711(d)(9)).

The defense presented evidence of three mitigating circumstances, the first being that "the defendant was under the influence of extreme mental or emotional disturbance," 42 Pa.C.S. 9711(e)(2). This, it was argued, was a result of years of drug and alcohol abuse. The defense also argued "the age of the defendant at the time of the crime," 42 Pa.C.S. § 9711(e)(4); Appellant was thirty years old at the time of the crime. The defense also introduced evidence of the general character of Appellant in relation to 42 Pa.C.S. 9711(e)(8), "any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense."

The jury rendered a verdict of death, finding two aggravating circumstances: the victim was a prosecution witness to a murder or other felony committed by defendant, and

5. Appellant also argued that his trial counsel were ineffective for "permitting him to give the statement ultimately used against him." There is no evidence in the record to support this argument. The record indicates that in an interview with Pennsylvania State Trooper Cimbalista on March 14, 1983, Appellant was advised of his constitutional rights, including the right to the presence of an attorney. Appellant stated that he understood his rights and did not wish to speak to an attorney and proceeded to give an inculpatory statement.

was killed for the purpose of preventing his testimony against the defendant in any grand jury or criminal proceedings involving such offenses; and the defendant committed a killing while in the perpetration of a felony. The jury found no mitigating circumstances.

Appellant's first argument concerning the sentencing hearing concerns aggravating circumstance 42 Pa.C.S. § 9711(d)(9). Over defense objection, the court permitted the prosecution to introduce evidence of Appellant's prior convictions on one charge of burglary and two escape charges as evidence attempting to establish that Appellant had a significant history of felony convictions involving the threat or use of violence to a person. No evidence was presented by the Commonwealth to show that these convictions involved the threat or use of violence to a person.

At the sentencing hearing, the Commonwealth argued that the inquiry here is whether "someone could have been seriously injured," equating the "threat of violence" with the "potential for violence." The trial court erroneously agreed with this argument. In our view, the language of 42 Pa.C.S. § 9711(d)(9) is clear as to this point. It is the "threat of" and not the "potential for" violence that brings a crime into this category.

Force is not an element of either of these crimes.[6] Indeed, both crimes can be committed without even encoun-

6. 18 Pa.C.S. § 5121 *Escape:*

(a) *Escape.*—A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

(d) *Grading.*—

(1) An offense under this section is a felony of the third degree where:

(i) the actor was arrested for or detained on a charge of felony or following conviction of crime:

(ii) the actor employs force, threat, deadly weapon or other dangerous instrumentality to effect the escape; or

(iii) a public servant concerned in detention of persons convicted of crime intentionally facilitates or permits an escape from a detention facility.

tering another person. Every felony has the potential for violence if the actor is caught. This, however, is not what the Legislature intended by the words "threat of violence" to the person. In order for a felony to be includable under 42 Pa.C.S. § 9711(d)(9), the Commonwealth must present evidence that the defendant actually threatened another with violence or actually used violence on another.

The evidence of the burglary and escape charges, as well as another conviction on two counts of aggravated assault, was presented to the jury in support of 42 Pa.C.S. § 9711(d)(9).

■■■ The jury, to its credit, however, did not find this aggravating circumstance. Therefore, the error committed by the trial court in submitting the evidence of the burglary and escape charges did not prejudice the defendant.

(2) Otherwise an offense under this section is a misdemeanor of the second degree.

(e) *Definition.*—As used in this section the phrase "official detention" means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail. 1972, Dec. 6, P.L. 1482, No. 334, § 1, effective June 6, 1973.

18 Pa.C.S. § 3502 *Burglary:*

(a) *Offense defined.*—A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

(b) *Defense.*—It is a defense of prosecution for burglary that the building or structure was abandoned.

(c) *Grading.*—Burglary is a felony of the first degree.

(d) *Multiple convictions.*—A person may not be convicted both for burglary and for the offense which it was his intent to commit after the burglarious entry or for an attempt to commit that offense, unless the additional offense constitutes a felony of the first or second degree. 1972, Dec. 6, P.L. 1482, No. 334, § 1, effective June 6, 1973.

18 Pa.C.S. § 3501 *Definitions*

*"Occupied structure."* Any structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present. 1972, Dec. 6, P.L. 1482, No. 334, § 1, effective June 6, 1973.

■ Appellant's next argument concerns the jury's finding that Appellant's victim was a prosecution witness, 42 Pa.C.S. § 9711(d)(5). Appellant argues that there was insufficient evidence to allow this circumstance to be presented to the jury and that the court's instruction as to this point was erroneous.

The Commonwealth argued at the sentencing hearing that Appellant had shot his victim the third and fatal time to prevent his being a witness against Appellant on the burglary charge. The court instructed, again over strenuous defense objection, that the jury must determine "what his position would be as [a] witness against Mr. Christy...." This is an erroneous interpretation of 42 Pa.C.S. § 9711(d)(5).

This aggravating circumstance states:

The victim was a prosecution witness to a murder or other felony committed by the defendant and was killed for the purpose of preventing his testimony against the defendant in any grand jury proceeding or criminal proceeding involving such offenses.

In this case, there was no evidence to establish that Mr. Volk was, or ever would have been, a prosecution witness, or that Appellant killed him to prevent his testimony. The Commonwealth did present evidence by a Robert DeRose, who stated that Appellant, in a 1980 conversation, had made a general threat against any possible witnesses against him; however, this was not specific enough to prove beyond a reasonable doubt that Appellant killed Mr. Volk to prevent his testimony in a criminal proceeding.

Therefore, we hold that aggravating circumstance five, as found by the jury in this case, was not supported by the evidence and must be stricken.

■ The jury did, however, find another aggravating circumstance which is fully supported by the evidence of record: the Appellant committed the killing while in the perpetration of a felony (42 Pa.C.S. § 9711(d)(6)). The felony was burglary. This is indisputable. Appellant ad-

mitted in both his statement to the police and on the witness stand at trial that he entered the building (an occupied structure) with the intent to commit a crime therein.

Furthermore, he does not challenge the finding of this circumstance on appeal. We, as is our duty under the sentencing scheme, have reviewed the record, and have determined that the evidence clearly supports the finding of this aggravating circumstance.

■■■ Therefore, since the jury found the presence of one aggravating circumstance and found no mitigating circumstances, the sentence of death is upheld even though another aggravating circumstance found by the jury is held invalid. 42 Pa.C.S. § 9711(c)(1)(iv) states:

> (iv) The verdict must be a sentence of death if the jury finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstance. . . .

In *Commonwealth v. Beasley*, 504 Pa. 485, 475 A.2d 730 (1984), we held that:

> Because the jury found at least one proper aggravating circumstance, viz. the killing of an on-duty police officer, and no mitigating circumstances, appellant's sentence of death was not only supported by evidence, but was required.[3]

---

3. We note that the jury also found that a second aggravating circumstance was present, namely, that "appellant has a significant history of felony convictions involving the use of threat of violence to the person," 42 Pa.C.S.A. § 9711(d)(9), based upon the fact that appellant concededly was convicted of murder once before, in 1972, for having shot to death a man in New Jersey. The presence of, and correctness of, a jury's finding of a second aggravating circumstance is not relevant in a case such as this where there have been found no mitigating circumstances, since an aggravating circumstance above requires a verdict of death."

504 Pa. 500, 475 A.2d at 738.

Therefore, in the instant case, the death sentence will not be vacated on the ground that one of the aggravating circumstances found by the jury was invalidated.

Appellant, lastly, argues that the death sentence imposed in this case was the product of passion, prejudice, and other arbitrary factors. It is submitted by Appellant that the

trial court's erroneous interpretation and application of the Sentencing Code, defense counsels' ineffective assistance, and the Commonwealth's improper argument at the sentencing hearing, were individually and in their cumulative effect, of such a nature as to compel arbitrariness in the jury's exercise of its discretion.

■ The first two of these contentions have been addressed above. The third, concerning the Commonwealth's improper argument at the sentencing phase, will be discussed now. At the sentencing hearing, the Commonwealth made the following references in its closing argument:

He is so bad we can't keep him in jail.... [Larry Christy] is the Great Manipulator, because he can get and he can do whatever he wants again and again and again.... Close the door. Don't let it revolve.... The penalty must be death.... Does this mean he should go back? ... Where is the protective element? ... But just how long is for life.... If the law is the only thing that separates us from total destruction. You live by the law. Mr. Christy must die by the law.... Larry himself told you the system must not work.... You, Ladies and Gentlemen, are the final straw. The system didn't work.... Now we go down to grass roots.... Let your words ring out. Let your message be very clear to Larry Christy. You are not going to be another victim of the manipulator.

In *Commonwealth v. Maxwell,* 505 Pa. 152, 477 A.2d 1309 (1984), we held that "although a prosecutor's statement may be inappropriate, a new trial will not be granted unless it is inevitable that the prosecutor's remark prejudices the defendant to such a degree that it prevents the jury from weighing the evidence and rendering a true verdict." (Citing *Commonwealth v. Upsher,* 497 Pa. 621, 444 A.2d 90 (1982); See *Commonwealth v. Burton,* 491 Pa. 13, 417 A.2d 611 (1980)).

In *Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983), we reviewed a claim of prosecutorial misconduct where the prosecutor stated, "Right now, the score is John

Lesko and Michael Travaglia two, society nothing. When will it stop? When is it going to stop? Who is going to make it stop? That's your duty."

We held that "the prosecution is permitted, by the terms of the statute, to argue in favor of the death penalty. 42 Pa.C.S. § 9711(a)(3). Taken in context, we find the prosecutor's comment to have been no more than permissible 'oratorical flair' in arguing in favor of the death penalty." 502 Pa. at 503, 467 A.2d at 302.

In the instant case, we find that the statements made by the prosecutor did not prejudice the finding of the aggravating circumstance that the killing had been committed while in the perpetration of a felony, which was conceded on appeal.

As is our duty under 42 Pa.C.S. § 9711(h),[7] we have carefully reviewed the sentence of death to determine whether it was the product of passion, prejudice, or any other arbitrary factor. We find no such evidence.

 Furthermore, as stated above, we find that the evidence fully supports the finding of an aggravating circumstance specified in 42 Pa.C.S. § 9711(d). Finally, pursuant to our statutory obligation to review death cases to determine whether the imposed sentence of death is "excessive or disproportionate to the penalty imposed in similar cases," we have conducted an evaluation of all convictions

7. *Review of death sentence—*
 (1) A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules.
 (2) In addition to its authority to correct errors at trial, the Supreme Court shall either affirm the sentence of death or vacate the sentence of death and remand for the imposition of a life imprisonment sentence.
 (3) The Supreme Court shall affirm the sentence of death unless it determines that:
 (i) the sentence of death was the product of passion, prejudice, or any other arbitrary factor;
 (ii) the evidence fails to support the finding of an aggravating circumstance specified in subsection (d); or
 (iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

of murder of the first degree prosecuted under the Act of September 13, 1978, P.L. 756, No. 141, 42 Pa.C.S. § 9711, aided by the comprehensive study prepared at our order by the Administrative Office of Pennsylvania Courts. (See, *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984)). Our review reveals no excess or disproportionality in the sentence imposed in this case compared to the sentences imposed in other first degree murder cases where the evidence could support an aggravating circumstance, such as herein, with no mitigating circumstances.

Affirmed.[8]

HUTCHINSON, J., files a concurring opinion.

NIX, C.J., files a concurring and dissenting Opinion.

ZAPPALA, J., files a dissenting opinion.

FLAHERTY, J., did not participate in the consideration or decision of this case.

HUTCHINSON, Justice, concurring.

I join the Opinion Announcing the Judgment of the Court.

As in *Commonwealth v. Buehl*, 510 Pa. 363, 508 A.2d 1167 (1986), the jury found no mitigating circumstances and one properly submitted aggravating circumstance. Thus, the rationale of *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), is applicable. *See Commonwealth v. Buehl, supra* (Hutchinson, J., concurring).

NIX, Chief Justice, concurring and dissenting.

I agree that a finding of murder in the first degree on this record was entirely appropriate and that verdict is properly sustained. I do not agree with the affirmance of the sentence of death in this case. Whether under the standard for testing the effectiveness of counsel in this

---

**8.** The Prothonotary of the Western District of Pennsylvania is directed to transmit to the Governor the full and complete record of the trial, sentencing hearing, imposition of sentence, and review by this Court. 42 Pa.C.S. § 9711(i).

Commonwealth as set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (which I believe to be more appropriate), or under *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967) (which had been the test in this jurisdiction), I am of the view that counsel's failure to object to the line of questioning by the prosecution during the sentencing hearing, *see* majority opinion at 838–839, constitutes ineffective assistance.

The thrust of this questioning was to demonstrate the appellant was beyond rehabilitation. The Commonwealth in its argument in support of the death sentence, which is set forth by the majority, slip op. at 26, used the testimony elicited from this questioning as its basis. Such a conclusion is of vital significance for a determination as to whether the life or death sentence should be imposed. The majority concedes that an objection should have been made but regrettably fails to recognize the impact this testimony had on a possible finding of a mitigating circumstance. I believe that this dereliction requires this Court to either vacate the death sentence and impose a sentence of life or at the very least remand the cause for a new sentencing hearing with competent counsel.[1] It may very well have been that if this line of questioning had been forestalled by an alert counsel's objection, "... the decision reached would reasonably likely have been different ..." as to the finding of no mitigating circumstance.[2] *Strickland v. Washington, supra* 466 U.S. at 696, 104 S.Ct. at 2069.

1. Although section 9711(h)(2) could be interpreted to foreclose the alternative of remanding for a new sentencing hearing, I do not believe that such a result is necessarily mandated. In any event, the instant sentence of death should be vacated.

2. The egregiousness of this error is exacerbated by the fact that three aggravating circumstances were permitted to be argued to the jury when only one was justified under the evidence. Even though the jury discarded one of the improper aggravating circumstances and the majority now acknowledges the invalidity of the other, the jury was improperly given a distorted view of the heinousness of the crime. While this record would justify a death sentence, the result should not be obtained through a distortion of the record.

ZAPPALA, Justice, dissenting.

I dissent. While my review of the record before us indicates that counsel's ineffectiveness [1] permeates the entire proceeding, for the purposes of this Opinion I find it necessary to address only those instances upon which the majority relies in finding no ineffectiveness, in order to support my contention that a new trial should be granted in the instant case.

The majority addresses Appellant's claim that counsel were ineffective for allowing evidence of Appellant's prior incarcerations to be heard by the jury. Slip opinion at 11. Following that quoted exchange the majority notes that at the hearing on post trial motions, "the defense attorney explained that he wanted to show that the witness had been in jail in order to attack his credibility," [2] then concludes *"[a]lthough the attorney should have been able to accomplish this without revealing that Appellant had also been in jail,* we find no prejudice to the defense in this instance." Maj. opinion at 502 (Emphasis added). If it is the majority's conclusion that the attorney should have been able to accomplish this without revealing that Appellant had also been in jail, a fact prejudicial to Appellant's case, *see, Commonwealth v. Bricker,* 506 Pa. 571, 487 A.2d 346 (1985); *Commonwealth v. Clark,* 453 Pa. 449, 309 A.2d 589 (1973), then it cannot be said that counsel's tactic had a

1. I question the validity of the majority's assertion that *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984) "establish[es] the same standard" for reviewing ineffectiveness claims as *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). Compare *Commonwealth v. Badger,* 482 Pa. 240, 393 A.2d 642 (1978), where both majority and dissent recognized that under *Washington* "no inquiry is necessary as to whether or not ineffectiveness, if found, resulted in prejudice." *Badger,* 482 Pa. at 249, 393 A.2d at 647 (Pomeroy, J., dissenting). On the understanding that it is *Strickland* which is being interpreted to conform to *Washington* and not *vice versa,* I take the majority at its word that Appellant's ineffectiveness claims are to be analyzed with the standard of *Washington* and its progeny in mind, maj. opinion at 835, and dispute here only the manner in which that standard is applied.

2. This exchange involved the cross-examination of Commonwealth witness Dennis by Attorney Rulis relative to Dennis' relationship to Christy.

reasonable basis designed to effectuate his client's interest for it is obvious that the alternative not chosen, bringing out the witness' incarceration without calling attention to that of Appellant, certainly offered a potential for success substantially greater than the tactics actually utilized. At this point the proper application of *Washington* requires a finding of ineffectiveness.

The majority next addresses the Appellant's contention that it was ineffective for trial counsel to allow the Commonwealth to bring out several other periods of incarceration during the introduction into evidence of Appellant's long history of placement in mental institutions. Because it was admittedly trial counsel's strategy to advance a diminished capacity defense, it was imperative that they lay a foundation for this defense by showing Appellant's significant history of confinement in these various mental institutions, as well as a suicide attempt. Knowing that the basis for Appellant's stay in these institutions and the suicide attempt was his prior criminal incarcerations, the only reasonable strategy would have been to attempt to introduce this evidence with all references to the criminal acts or incarcerations eliminated. This could have been accomplished through a pre-trial motion or a motion in limine outside the hearing of the jury, where counsel could have advanced the argument that the need for this evidence was so necessary to promote Appellant's defense, that the Commonwealth should be precluded from any cross-examination which touched on any reference to past bad acts. *Cf., Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973). This was neither contemplated nor done. This alternative had a substantial likelihood for success since the Commonwealth's need for this evidence in challenging the validity of Appellant's stays in these institutions could have been met through other means—most directly by testimony of the treating physicians relative to whether Appellant manipulated his way into these institutions or not. It cannot be realistically said that the failure to attempt such

a strategy had any reasonable basis designed to effectuate their client's interest.

Putting this failure of representation to one side and examining the situation which actually occurred at trial, (as if, for example, such a motion had been made and denied, requiring counsel to put the Appellant on the stand at the risk of having his prior incarceration revealed on cross-examination) I discern no basis for counsel's failure to object to the manner in which this information was elicited.

Q. (District Attorney Kiniry) Now, Larry, you told us about all the times that you were in these mental hospitals and drug rehabilitation clinics yesterday, right?

A. (Appellant) Yes.

Q. So, you have been in Farview, Mayview, Norristown, Johnstown, Hollidaysburg; is that right?

A. That is right.

Q. Isn't it true that every time you went in one of those hospitals or clinics you were put in there from either a local jail or a State Prison?

A. That is true.

Q. So, you have never been taken off the street and put into one of these facilities, have you?

A. I can't remember if the Hollidaysburg one was.

Q. Well, let's look when you went to Farview. You were in where? What prison were you in then?

A. The first time I was at Huntingdon.

Q. It is not too nice at Huntingdon, is it?

A. It is not too nice in any prison.

Q. That is a good point, because every time you go to prison, you do something which gets you put into one of these mental hospitals or drug rehabilitation clinics; isn't that true?

And when you spend your time in jail, you're in some kind of a hospital, it is a little nicer in the hospital than it is in the prison, isn't it, Larry?

A. A couple of them, yes.

Q. A little maybe cleaner sheets and nicer beds and better food?

A. No, not—

Q. Not the food, huh?

A. Not the food, no, especially Farview.

Q. Well, let's look at Farview. If you hadn't been in Farview those years you would have been sitting in Huntingdon, right?

A. Huntingdon or—

Q. Or some other State Prison. But you get to stay in Farview and when your sentence was up they let you out, right?

A. When my sentence was up they moved me out of the hospital, yes.

Q. You got out?

A. After several different channels.

Q. And so how many times have you been through these drug rehabilitation programs now, Larry?

A. I have been only through one drug rehabilitation center. I was told to go to other ones, but I didn't go because of the times that I was in prison, when I did get out, I was only out 30 days, I went out high, stayed high until they caught me again.

Q. So that is the story of Larry Christy's life. You get in trouble. You go to jail. You don't like to be in jail, so, you do something to get you into the hospital. You serve your time. You get back out on the street. You do something bad. You go back into jail. You go back into the hospital. We can't rehabilitate you, can we, Larry?

Trial Transcript of December 8, 1983, at pp. 26–28.

Using the Appellant as a foil, the district attorney was able to argue to the jury from "facts" not in the record that the Appellant's history of treatment for mental disturbance was a sham. Such it may have been, but the Commonwealth should have been required to introduce its own evidence, *e.g.*, psychiatric reports indicating no validity to the claims of mental illness, to make this case. Counsel's

failure to object to this highly prejudicial exchange is inconceivable. This is certainly ineffectiveness of the most prejudicial kind; yet the majority chooses to forego any detailed analysis and concludes:

> We find that any error that existed by this course of action did not prejudice Appellant and had no effect on the judgment in this case *or on the balance of aggravating and mitigating circumstances.* Here, Appellant testified at trial that his victim was on his knees, choking on his own blood. ... Thus, Appellant admitted that the act of killing his victim was deliberate and premeditated. The defense attempted to establish that due to Appellant's diminished mental capacity at the time of the killing, he did not act willfully. The jury was justified in disbelieving this defense and finding that he did act willfully, deliberately, and with premeditation beyond a reasonable doubt.

Maj. opinion at p. 502–503 (Emphasis added). Even conceding the overwhelming evidence of guilt, it cannot be objectively determined how this unnecessary evidence affected the minds of the jury at the penalty phase of the trial, a time when, at the very least, the evidence of mental capacity, while not negating the specific intent of the crime, could indeed have had some effect on the mitigation and penalty assessed. As Mr. Chief Justice Nix correctly points out in his dissent, Maj. opinion at p. 514, Nix, C.J., dissenting), this exchange was used as the basis of the Commonwealth's argument for the death penalty during the penalty phase of the trial. Additionally, since the majority has found error in two of the three aggravating circumstances presented to the jury, a finding of the mitigating circumstance that "the defendant was under the influence of extreme mental or emotional disturbance," 42 Pa.C.S. 9711(e)(2), could well have negated the imposition of the death penalty. The majority, however, in its "rush to justice" fails to give this possibility even cursory analysis. In view of the consequences, I find this unacceptable.

That a defendant should suffer the statutory punishment for the heinous crime he commits will never be disputed. However, where a defendant is sentenced to suffer the ultimate penalty of death, I will never support a rule of law which allows that defendant to face his death without being provided the fairest trial, though it need not be perfect, that he may be entitled to as guaranteed by both the State and Federal Constitutions. Anything less is unacceptable. I must therefore dissent from what I perceive this Court's direction to be-a shortcut, result-oriented practice of jurisprudence.