J. S38010/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| EARL CALVIN HANDFIELD, II, | : | No. 2582 EDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, July 28, 2015,
in the Court of Common Pleas of Chester County
Criminal Division at No. CP-15-CR-0004908-2007

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JULY 20, 2016**

Earl Calvin Handfield, II, appeals from the July 28, 2015 order of the

Chester County Court of Common Pleas denying his first petition under the

Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court provided the following facts and procedural history:

> The Commonwealth's theory of the case, as
> evidenced from the testimony provided at trial, is
> that [appellant] murdered Corey Jennings on
> October 19, 2005 in retaliation for Mr. Jennings'
> having earlier that summer stolen a gold chain from
> around [appellant's] neck in an altercation between
> [appellant,] Duron Peoples, Francis Washington, and
> Mr. Jennings.  As part of its case-in-chief, the
> Commonwealth relied on the testimony of the
> aforementioned David Christopher Johnson, a/k/a
> "Science," who testified, as part of a plea agreement
> with the Commonwealth, that he was with
> [appellant] at the time of the murder and that
> [appellant] confessed to him that he killed Corey
> Jennings and on the testimony of [appellant's]

former girlfriend, Adrienne Beckett, to whom [appellant] also confessed and who helped him dispose of the murder weapon in Rising Sun, Maryland, and who was caught in a wiretapped conversation admitting to perjury before the Grand Jury and attempting to suborn it from another Grand Jury witness, Mr. Johnson's girlfriend, Ataya Shabazz. At trial, the Commonwealth presented witnesses who testified that Mr. Peoples placed [appellant's] stolen chain inside Corey Jennings' casket at the funeral.

[Appellant's] trial counsel, Joseph P. Green, Jr., Esquire, represented both Duron Peoples and [appellant] during the Grand Jury investigation into Mr. Jennings' death and [appellant's] subsequent criminal trial. Duron Peoples did not testify either before the Grand Jury or at [appellant's] trial. The Commonwealth had, during the Grand Jury proceedings, expressed an interest in calling Mr. Peoples as a witness, and had filed a motion to disqualify Mr. Green from representing both Mr. Peoples and [appellant] before that body. Mr. Green, for his part, filed a motion to quash the subpoena directed towards Mr. Peoples. The Commonwealth, Mr. Green and Mr. Peoples appeared before the Supervising Grand Jury Judge to litigate these Motions. Mr. Peoples testified at this hearing that he wished to [retain] Mr. Green as his counsel. Mr. Green then advised the Supervising Grand Jury Judge that if Mr. Peoples were called as a witness, Mr. Peoples would invoke his Fifth Amendment privilege against self-incrimination. The Supervising Grand Jury Judge took the parties' motions under advisement. However, subsequent to this meeting, the Commonwealth re-evaluated its position and decided not to call Mr. Peoples as a witness. Both the present attorney for the Commonwealth and present PCRA counsel have represented to the Court that, due to the Commonwealth's final decision not to call Mr. Peoples[] as a witness, the litigation concerning the Commonwealth's motion to disqualify Mr. Green as counsel became moot and no Order

was ever entered with respect thereto by the Supervising Grand Jury Judge.

A few months after [appellant's] conviction and sentencing, [appellant] met Mr. Peoples at a state prison. After their meeting, [appellant] obtained from Mr. Peoples two signed Affidavits stating that the altercation at the Turkey Hill[1] in the summer of 2005 was solely between [appellant] and Mr. Peoples and that Corey Jennings had nothing to do with it. In these Affidavits, among other things, Mr. Peoples states that it was he who stole [appellant's] chain, not Mr. Jennings, and asserts that the chain he placed into Mr. Jennings' casket was not the same one that had belonged to [appellant.] In other words, he is attempting to undermine the Commonwealth's proof of motive and their theory of the case. In these affidavits, Mr. Peoples claims that he would have been willing and able to testify at [appellant's] trial, but states that trial counsel Green informed him that [appellant] did not wish to utilize him as a witness.

Again following his conviction and sentence, [appellant] obtained from David Christopher Johnson a signed Affidavit claiming that his trial testimony was a lie. In this Affidavit, Mr. Johnson denied having been with [appellant] at the time of Mr. Jennings' murder and states that he lied at trial in order to procure an advantageous plea deal with the Commonwealth. However, after Mr. Johnson's Affidavit surfaced, the Commonwealth initiated an investigation into the allegations made by Mr. Johnson. Chester County Detective Thomas J. Goggin interviewed Mr. Johnson. According to Detective Goggin's subsequent report, Mr. Johnson disclaimed the statements made in his December 4, 2014 Affidavit, stating that he was forced to sign that instrument at knife point by two fellow inmates he stated he believed were acting at [appellant's] behest.

---

[1] Turkey Hill is a convenience store.

PCRA court opinion, 7/28/15 at 4-8.

The PCRA court also provided the following additional procedural history as it relates to the appeal before us:

> On September 9, 2013, [appellant] filed a *pro se* first timely PCRA petition. By Order dated September 12, 2013, [the PCRA court] appointed PCRA counsel to represent [appellant] in connection with his first timely PCRA petition. After several changes in PCRA counsel and continuances to accommodate them, present counsel filed an Amended PCRA petition on [appellant's] behalf on August 7, 2014. The Commonwealth filed its Answer to [appellant's] Amended PCRA petition on September 26, 2014. [Appellant] replied to the Commonwealth's Answer on December 17, 2014. On January 6, 2015, [appellant] moved to supplement his PCRA petition. By Order dated February 10, 2015, [the PCRA court] granted [appellant] leave of court to amend his PCRA petition with the supplemental petition he filed on January 6, 2015. The Commonwealth filed an Answer to [appellant's] Supplemental PCRA Petition on January 27, 2015. [Appellant] replied to the Commonwealth's Answer on March 20, 2015. On April 2, 2015, [appellant] again moved to supplement his PCRA petition. By Order dated April 13, 2015, [the PCRA court] granted [appellant] leave of court to amend his PCRA petition in accordance with the motion he filed on April 2, 2015.

> During the course of these filings, on March 10, 2015 the Commonwealth filed a Motion *in Limine* seeking to admit prior immunized testimony of [appellant] given before the Chester County Thirteenth Investigating Grand Jury. [Appellant] responded to this Motion on March 26, 2015. On March 24, 2015, the Commonwealth filed a Memorandum of Law wherein the Commonwealth made a motion *in limine* to exclude from consideration the December 4, 2014 Affidavit of one David Christopher Johnson attached to [appellant's]

- 4 -

> January 6, 2015 Motion for Leave to Amend [PCRA] Petition as Exhibit A.
>
> On March 27, 2015 and April 6, 2015, [the PCRA court] held an evidentiary hearing on [appellant's] PCRA Petition, as amended and supplemented by counsel as discussed above. At the first of these two PCRA hearings, [the PCRA court] granted the Commonwealth's motion *in limine* to exclude Mr. Johnson's December 4, 2014 Affidavit from consideration. At the second hearing, the Commonwealth withdrew its Motion *in limine* seeking to admit portions of earlier immunized testimony given by [appellant] before the Grand Jury. At the conclusion of the April 6, 2015 hearing, [the PCRA court] took [appellant's] first PCRA petition as amended and supplemented under advisement.

PCRA court opinion, 7/28/15 at 1-2.

On July 28, 2015, the PCRA court dismissed appellant's PCRA petition. Appellant filed a timely notice of appeal on August 24, 2015. On August 28, 2015, the PCRA court ordered appellant to produce a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed his concise statement on October 12, 2015, and the PCRA court filed an opinion pursuant to Pa.R.A.P. 1925(a) on October 21, 2015.

Appellant raises the following five issues for our review:

> I. Did the lower court err in denying appellant's claim that he should receive a new trial based on the Commonwealth, in violation of **Brady v. Maryland**,[2] failing to provide to the defense a video interview of a critical potential defense witness whose testimony offered compelling substantive and impeachment evidence and

---

[2] **Brady v. Maryland**, 373 U.S. 83 (1963).

despite counsel specifically requesting the evidence in question prior to trial?

II. Did the lower court err in denying appellant's claim that his conviction resulted from the ineffective assistance of his trial counsel due to counsel failing to investigate a witness whose testimony would have served to substantially undermine the Commonwealth's case?

III. Did the lower court err in denying appellant's claim that his trial counsel was ineffective due to a conflict of interest that existed between counsel, appellant, and another of counsel's clients, Duron Peoples; a potential fact witness who possessed important, first-hand knowledge about the facts underlying appellant's case?

IV. Did the lower court err in denying appellant's claim that his trial counsel was ineffective for failing to investigate his own client, Duron Peoples, with respect to one of the central evidentiary issues in appellant's case?

V. Did the lower court err in denying appellant's claim that his discovery following his conviction that an item of evidence presented by the Commonwealth at trial -- specifically, a necklace exhumed from the casket of the deceased, which the Commonwealth claimed was the proceeds of an earlier robbery of appellant and provided the motive for the murder in his case -- was not the necklace the Commonwealth claimed it to be?

Appellant's brief at 4 (capitalization omitted).[3]

_____

[3] At the outset, we note that the Pennsylvania Rules of Appellate Procedure limit a principal brief to 14,000 words, unless the brief does not exceed 30 pages. Pa.R.A.P. 2135(a)(1). Where the brief exceeds 30 pages, a certificate of compliance with the 14,000 word-count limit must be filed. *Id.* Here, appellant's principal brief is 80 pages in length--nearly three times the

PCRA petitions are subject to the following standard of review:

> "[A]s a general proposition, we review a denial of PCRA relief to determine whether the findings of the PCRA court are supported by the record and free of legal error." ***Commonwealth v. Dennis***, 609 Pa. 442, 17 A.3d 297, 301 (Pa. 2011) (citation omitted). A PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court. ***Id.*** at 305 (citations omitted). To obtain PCRA relief, appellant must plead and prove by a preponderance of the evidence: (1) his conviction or sentence resulted from one or more of the errors enumerated in 42 Pa.C.S. § 9543(a)(2); (2) his claims have not been previously litigated or waived, ***id.*** § 9543(a)(3); and (3) "the failure to litigate the issue prior to or during trial . . . or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel[.]" ***id.*** § 9543(a)(4). An issue is previously litigated if "the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue[.]" ***Id.*** § 9544(a)(2). "[A]n issue is waived if [appellant] could have raised it but failed to so before trial, at trial, . . . on appeal or in a prior state postconviction proceeding." ***Id.*** § 9544(b).

***Commonwealth v. Treiber***, 121 A.3d 435, 444 (Pa. 2015).

Under the PCRA, an individual is eligible for post-conviction relief if the conviction was the result of "[a] violation of the Constitution of this

---

maximum page length prescribed by Rule 2135(a)(1). Counsel, however, filed a petition pursuant to Rule 2135(a)(1) requesting permission to exceed the brief's maximum word count and page limit. ***See DeMasi v. DeMasi***, 530 A.2d 871, 874 n.1 (Pa.Super. 1987), ***appeal denied***, 539 A.2d 811 (Pa. 1988). We will grant appellant's petition and consider all issues on their merits.

Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(i).

The PCRA also permits relief when a conviction is the result of "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process, that no reliable adjudication of guilt or innocence could have taken place." *Id.* at § 9543(a)(2)(ii).

## I.

In his first issue on appeal, appellant avers that the Commonwealth failed to provide a video interview of Willie Suber, which appellant alleges, contains exculpatory information and was otherwise valuable to appellant. (Appellant's brief at 29.)

> In interpreting [] federal precedent [], this Court has explained that, in order to establish a *Brady* violation, a defendant must show that: (1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant. *See Commonwealth v. Lambert*, 584 Pa. 461, 471, 884 A.2d 848, 854 (2005); *Commonwealth v. Collins*, 585 Pa. 45, 68, 888 A.2d 564, 577-78 (2005). However, "[t]he mere possibility that an item of undisclosed information *might* have helped the defense, or *might* have affected the outcome of the trial, does not establish materiality in the

> constitutional sense." ***Commonwealth v. Chambers***, 570 Pa. 3, 29, 807 A.2d 872, 887 (2002) (citation omitted and emphasis added). Rather, evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Id.*** at 29, 807 A.2d at 887-88 (quoting [***United States v. Bagley***, 473 U.S. 667, 682 (1985)]).

***Commonwealth v. Willis***, 46 A.3d 648, 656 (Pa. 2012) (plurality). "When conducting this analysis in the PCRA context, a defendant must establish that the alleged ***Brady*** violation 'so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'" ***Commonwealth v. Haskins***, 60 A.3d 538, 547 (Pa.Super. 2012), ***appeal denied***, 78 A.3d 1090 (Pa. 2013), citing 42 Pa.C.S.A. § 9543(a)(2)(i); ***Commonwealth v. Copenhefer***, 719 A.2d 242, 259 (Pa. 1998), ***cert. denied***, 528 U.S. 830 (1999). Our supreme court has also held that, "no ***Brady*** violation occurs where the parties had equal access to the information or if the defendant ***knew or could have uncovered such evidence with reasonable diligence***." ***Commonwealth v. Morris***, 822 A.2d 684, 696 (Pa. 2003), citing ***Commonwealth v. Paddy***, 800 A.2d 294, 305 (Pa. 2002) (emphasis added).

The record reflects that appellant's trial counsel was first made aware that Suber's interview with the police was videotaped when he received, prior to trial, the police's typed interview summary, which alluded to the

existence of a tape of the interview. (Notes of testimony, 3/27/15 at 132.) Because trial counsel became aware of the tape prior to trial, in order to preserve a *Brady* claim for the purposes of PCRA review, the claim would have had to have been raised either before or during trial, during unitary review, direct appeal, or a prior state post-conviction proceeding. 42 Pa.C.S.A. § 9544(b). Failure to do so would result in waiver for the purposes of PCRA review. *Id.* A PCRA petitioner may circumvent waiver only by demonstrating an ineffectiveness of counsel in waiving the issue. *Commonwealth v. Albrecht*, 720 A.2d 693, 700 (Pa. 1998).

After a careful review of the record, at no point prior to his PCRA petition does appellant raise a *Brady* claim before the court either before or during trial, during unitary review, or on direct appeal. Contrary to the next three issues before us on appeal, appellant did not raise the *Brady* claim as a layered ineffective assistance of counsel claim. Accordingly, the issue is waived and appellant is not entitled to relief.

## II.

In his next three issues for our review, appellant avers that his trial counsel, Joseph Green, Esq., provided ineffective assistance of counsel. For his second issue, appellant specifically avers that Attorney Green provided ineffective assistance due to his alleged failure to investigate Suber as a potential defense witness. (Appellant's brief at 44.)

When considering whether counsel was ineffective, we are governed by the following standard:

> [C]ounsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). This Court has described the *Strickland* standard as tripartite by dividing the performance element into two distinct components. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). Accordingly, to prove counsel ineffective, the petitioner must demonstrate that (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) the petitioner was prejudiced by counsel's act or omission. *Id.* A claim of ineffectiveness will be denied if the petitioner's evidence fails to satisfy any one of these prongs.
>
> *Commonwealth v. Busanet*, 54 A.3d 34, 45 (Pa. 2012) (citations formatted). Furthermore, "[i]n accord with these well-established criteria for review, [an appellant] must set forth and individually discuss substantively each prong of the *Pierce* test." *Commonwealth v. Fitzgerald*, 979 A.2d 908, 910 (Pa.Super. 2009).

*Commonwealth v. Perzel*, 116 A.3d 670, 671-672 (Pa.Super. 2015).

When evaluating whether counsel was ineffective for failing to investigate a potential witness, we are bound by the following standard:

> The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant

to a reasonable strategic decision, may lead to a finding of ineffective assistance. Recently summarizing cases in **Commonwealth v. Dennis**, 597 Pa. 159, 950 A.2d 945 (2008), this Court stated that:

> These cases . . . arguably stand for the proposition that, at least where there is a limited amount of evidence of guilt, it is **per se** unreasonable not to attempt to investigate and interview known eyewitnesses in connection with defenses that hinge on the credibility of other witnesses. They do not stand, however, for the proposition that such an omission is **per se** prejudicial.

**Id.** at 960 (citing **Perry**, **supra**; **Commonwealth v. Weiss**, 530 Pa. 1, 606 A.2d 439, 442-43 (1992); **Commonwealth v. (Harold) Jones**, 496 Pa. 448, 437 A.2d 958 (1981); **Commonwealth v. Mabie**, 467 Pa. 464, 359 A.2d 369 (1976)) (emphasis omitted). Indeed, such a **per se** failing as to performance, of course, does not make out a case of prejudice, or overall entitlement to **Strickland** relief.

When raising a failure to call a potential witness claim, the PCRA petitioner satisfies the performance and prejudice requirements of the **Strickland** test by establishing that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

**Commonwealth v. Washington**, 592 Pa. 698, 927 A.2d 586, 599 (2007). To demonstrate **Strickland** prejudice, the PCRA petitioner "must show how the

> uncalled witnesses' testimony would have been beneficial under the circumstances of the case." ***Commonwealth v. Gibson***, 597 Pa. 402, 951 A.2d 1110, 1134 (2008); see also ***Commonwealth v. Chmiel***, 585 Pa. 547, 889 A.2d 501, 546 (2005) ("Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness' testimony would have been beneficial or helpful in establishing the asserted defense.").

***Commonwealth v. Johnson***, 966 A.2d 523, 535-536 (Pa. 2009).

We agree with the PCRA court's finding that appellant's claim is without merit. Specifically, the PCRA court reached the following conclusion that Suber's testimony would not have been helpful to the defense at trial:

> The Commonwealth's probe of Willie Suber's testimony at the PCRA hearing obliterates [appellant's] claim that Mr. Suber's testimony would have been helpful to him. . . . [O]n cross-examination Mr. Suber admitted that he was not at his mother's apartment for the entirety of the evening on which Mr. Jennings was shot.[4] Thus, he would not have known if someone came to or left the apartment during the time that he was absent. Willie Suber's testimony would not have helped [appellant] because his assertion that no one came to or left Ms. Beckett's apartment on the night of the Jennings homicide would have been easily discredited on cross-examination. [Appellant] himself, when he identified Mr. Suber to trial counsel Green, added the caveat that "I don't know if he's useful." [Appellant] cannot, on this record, claim prejudice by counsel's failure to find the fault with Willie Suber's testimony earlier.

PCRA court opinion, 7/28/15 at 33-34 (citations omitted).

---

[4] Suber's mother is Adrienne Beckett. (Notes of testimony, 3/27/15 at 207.)

Because there is support in the record for the PCRA court's determination of fact, we are bound to the lower court's factual determination. ***See Treiber***, 121 A.3d at 444. Based on the PCRA court's factual determinations, we find that appellant has not met his burden in proving that had Suber been investigated and called as a witness at trial, his testimony would have been helpful in establishing appellant's defense. Accordingly, appellant's claim is without arguable merit.

**III.**

For his third issue on appeal, appellant avers that Attorney Green provided ineffective assistance of counsel because of an alleged conflict of interest that existed as the result of Attorney Green's concurrent representation of appellant and Duron Peoples. (Appellant's brief at 57.)

When considering whether counsel rendered ineffective assistance as a result of dual representation, we are held to the following standard:

> As our Court recently explained, a petitioner "cannot prevail on a conflict of interest claim absent a showing of actual prejudice." ***Commonwealth v. Weiss***, [81 A.3d 767 (Pa. 2013)]; ***see also Commonwealth v. Hawkins***, 567 Pa. 310, 787 A.2d 292, 297 (2001) (offering that petitioner must demonstrate that counsel's prior representation of Commonwealth witness adversely affected counsel's representation of petitioner under PCRA). We further explained that, although prejudice is presumed when there exists an actual conflict of interest, this presumption is only applicable when counsel actively represented conflicting interests. ***Weiss***, [81 A.3d at 794 n. 16]. Where counsel does not actively represent conflicting interests, a claim

> based upon the appearance of a conflict of interest lacks merit. ***Id.***

***Commonwealth v. Reid***, 99 A.3d 427, 442-443 (Pa. 2014) (citations omitted). "To establish an actual conflict of interest hampered counsel, [a petitioner] must show counsel actively represented conflicting interests and the conflict adversely affected counsel's performance." ***Commonwealth v. Solano***, 129 A.3d 1156, 1168 (Pa. 2015), citing ***Commonwealth v. Padilla***, 80 A.3d 1238, 1248 (Pa. 2013) (citations omitted), ***cert. denied***, ___ U.S. ___, 134 S.Ct. 2725 (2014).

In an attempt to establish that Attorney Green was actively representing conflicting interests to the point that his performance was adversely affected, appellant avers that Attorney Green's dual representation of appellant and Peoples prevented Attorney Green from calling Peoples as a witness for the defense at trial. (***See*** appellant's brief at 71-72.) Specifically, appellant alleges that Attorney Green was prevented from calling Peoples as a witness because doing so would place Peoples in jeopardy of facing potential criminal charges for his role in the incident at Turkey Hill.

The record belies appellant's averments. As noted in more detail ***infra***, Peoples had invoked his Fifth Amendment right to not incriminate himself, and was accordingly unavailable to testify. As noted by the PCRA court, Attorney Green's "performance was not adversely affected by his dual representation of [appellant] and Mr. Peoples. [Appellant] could not have

obtained a different result even if Mr. Peoples[] had been represented by other counsel or had represented himself." (PCRA court opinion, 7/28/15 at 45-46.) Because Peoples would have been unavailable to testify, regardless of who was representing him based on his decision to exercise his Fifth Amendment rights, appellant is unable to demonstrate an actual prejudice as a result of Attorney Green's dual representation of both appellant and Peoples. Accordingly, we find appellant's claim to be without merit.

**IV.**

In his fourth issue on appeal, appellant avers that Attorney Green provided ineffective assistance for failing to investigate Duron Peoples as a witness. (Appellant's brief at 72.) Specifically, appellant alleges that Attorney Green should have investigated Peoples regarding the necklace that Peoples placed in Jennings' casket and whether that necklace was the same necklace that was stolen from appellant during the incident at Turkey Hill in the summer of 2005. Appellant's claim is without merit.

At the PCRA hearing, Attorney Green testified that Peoples told him that Jennings had taken the chain from appellant. (Notes of testimony, 3/27/15 at 179-180.) Peoples' account to Attorney Green corroborated the theory that the Commonwealth presented at trial that appellant killed Jennings as revenge for stealing his chain during the incident at Turkey Hill. (**See** notes of testimony, 6/8/12 at 132.) When Peoples was subpoenaed to appear before the grand jury investigating Jennings' death, Attorney Green

testified that he advised Peoples to invoke his Fifth Amendment right against self-incrimination by refusing to answer any questions about the case unless the Commonwealth granted him immunity.[5] (Notes of testimony, 3/27/15 at 180.) In his testimony at the PCRA hearing, Attorney Green discussed his appearance with Peoples before the grand jury's supervising judge, during which Attorney Green recalled disclosing the following to the supervising judge: "At sometime [sic] before the killing of Mr. Jennings there was a meeting at the Turkey Hill located near 340 and 82. At that meeting Mr. Jennings had taken from Mr. Handfield a chain that Mr. Handfield was wearing." (*Id.* at 178.) According to Attorney Green's testimony, Peoples never told him that the account he provided to the supervising judge was inaccurate, and that Peoples had "communicated to [him] that Jennings had taken the chain and it was not his, Peoples' idea." (*Id.* at 179.)

The PCRA court made the following finding of fact and credibility determination:

> As an after-the-fact recantation of [Peoples'] previous position, the veracity of his testimony and these Affidavits is inherently suspect.[Footnote 6] Indeed, Mr. Peoples[] admitted at the PCRA hearing that, at the time of the Grand Jury investigation into Corey Jennings' homicide, he refused to testify, despite suggestions by county detectives that he could help himself in other legal matters with which he was involved. Mr. Peoples testified he told detectives, "I don't want to help nobody." [(Notes of

---

[5] Attorney Green advised Peoples to invoke his Fifth Amendment rights because Peoples' testimony regarding the incident at Turkey Hill may have incriminated himself for robbery. (*Id.* at 116.)

testimony, 4/6/15 at 259-260.)] In his own testimony at the PCRA hearing, Mr. Peoples contradicted himself about his supposed willingness to aid the defense at the time he was given the opportunity to testify about his knowledge of the Jennings homicide prior to charges being filed against [appellant.] (*Id.*) Consequently, [the PCRA court found] his post-trial narrative of the events surrounding the Jennings homicide and his assertions that he would have testified had he been asked to be dubious at best and not worthy of credence.

> [Footnote 6:] Trial counsel testified that the information [appellant] provided him during the course of his representation of [appellant] in connection with the above-captioned matter corroborated Mr. Peoples' account that Corey Jennings took the chain from [appellant], not Mr. Peoples. ([Notes of testimony, 3/27/15 at 187-188.) Appellant] and Mr. Peoples, whose statements to counsel prior to and during the trial of this matter, by counsel's account, coincided on all material points and reflected Mr. Jennings' responsibility for the physical theft of [appellant's] chain cannot now be countenanced to profit from manipulating the system by coordinating their testimonies post-conviction to assert a contrary position.[6]

---

[6] Indeed, Peoples' recorded prison conversations, as read into the record at the PCRA hearing, reflect a desire to "profit from manipulating the system" by asserting a contrary position post-conviction. Peoples admitted to saying the following in a recorded conversation with his girlfriend at the Chester County Prison:

> Because they are trying, the whole thing is, they're trying to say that boy Peen [Jennings] took [] Earl's necklace. . . . And I told them that. I said I told my lawyer, like I want to tell them that I did that. . . .

> Because the [PCRA court credits] the testimony of Mr. Green over that of Mr. Peoples, [the PCRA court finds] that there was no conflict between [appellant] and Mr. Peoples prior to or during [appellant's] trial, such that there was no reason to call Mr. Peoples as a witness in [appellant's] trial because he could not provide any testimony that would have been helpful to the defense.

PCRA court opinion, 7/28/15 at 42-43 (citations omitted); **see also id.** at 48 ("[W]e do not credit Mr. Peoples' PCRA testimony or Affidavits stating that he would have been available and willing to testify on [appellant's] behalf at [appellant's] 2009 trial, nor do we credit his testimony and Affidavits concerning the substance of what he allegedly would have testified to . . .").

As noted **supra**, we are bound by the PCRA court's determination of facts and credibility, so long as support for the PCRA court's conclusions can be found in the record. **See Treiber**, 121 A.3d at 444. Because there is ample support in the record for the PCRA court's factual findings and credibility determinations, we are, therefore, bound to them. Accordingly, we find that appellant's claim that Attorney Green was ineffective for failing

---

> He [Jennings] didn't have nothing to do with this. He didn't do nothing about this s***. . . . He didn't know nothing about none of this. He was there, yeah, but he had nothing to do with this s***. . . . So that this time, so by me saying that, . . . [i]s f***ing up their [the Commonwealth's] whole situation and by me telling them that the lawyer knew that, because we both had the same lawyer.

Notes of testimony, 4/6/15 at 289-290.

to investigate Peoples as a potential witness is without merit. The record indicates that Attorney Green did discuss the incident at Turkey Hill with Peoples, and that Peoples' account of the incident corroborated the Commonwealth's theory of the case.

## V.

For his fifth and final issue for our review, appellant avers that Peoples' later testimony regarding the necklace placed in the victim's casket and whether that particular necklace was the same one stolen from appellant constitutes after-discovered evidence, which would warrant a new trial. (Appellant's brief at 76.) Because we determined that Attorney Green was not ineffective for failing to investigate and call Peoples as a witness, we must now consider whether Peoples' changed statement constitutes after-discovered evidence, which would warrant granting appellant a new trial.

> We have explained that when a petitioner is seeking a new trial based on alleged after-discovered evidence in the form of recantation testimony, the petitioner must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. ***Commonwealth v. Johnson***, 600 Pa. 329, 966 A.2d 523, 541 (2009); ***Commonwealth v. Washington***, 592 Pa. 698, 927 A.2d 586, 595-96 (2007); ***Commonwealth v. D'Amato***, 579 Pa. 490, 856 A.2d 806, 823 (2004); ***Commonwealth v. Wilson***, 538 Pa. 485, 649 A.2d 435 (1994). Further, the proposed new evidence must be

producible and admissible. [*Commonwealth v. Scott*, 470 A.2d 91, 93 (Pa. 1983)].

*Commonwealth v. Smith*, 17 A.3d 873, 887 (Pa. 2011), *cert. denied*, ___ U.S. ___, 133 S.Ct. 24 (2012).

In regards to recantation testimony, our supreme court has instructed the following:

> Recantation testimony is extremely unreliable. *Commonwealth v. McCracken*, 540 Pa. 541, 659 A.2d 541 (1995); *Commonwealth v. Nelson*, 484 Pa. 11, 398 A.2d 636 (1979); *Commonwealth v. Coleman*, 438 Pa. 373, 264 A.2d 649 (1970). When the recantation involves an admission of perjury, it is the least reliable form of proof. *Coleman*. The trial court has the responsibility of judging the credibility of the recantation. *Nelson*. Unless the trial court is satisfied that the recantation is true, it should deny a new trial. *Nelson*; *Coleman*. An appellate court may not disturb the trial court's determination absent a clear abuse of discretion. *Nelson*.

*Commonwealth v. Henry*, 706 A.2d 313, 321 (Pa. 1997).

Here, appellant's affidavits are synonymous with recantation testimony because they equate to a change in testimony. The PCRA court, as noted above, judged the credibility of Peoples' recantation, and in so doing, determined that Peoples' recantation was not credible. Specifically, the PCRA court found neither Peoples' affidavits[7] nor his testimony during the PCRA hearing to be credible. As we noted above, the record provides ample

---

[7] Peoples executed two affidavits in which he indicated that he was willing to testify at appellant's trial regarding the incident at Turkey Hill, and that the incident at Turkey Hill was only between Peoples and appellant, and that Jennings was not involved. (Notes of testimony, 4/6/15 at 268-269.)

support for the PCRA court's determination of credibility. Accordingly, there is no clear abuse of discretion; therefore, we cannot disturb the PCRA court's determination. As a result, appellant's after-discovered evidence claim is without merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2016